*Charles C. Reger v. Washington County Board of Education et al.*, No. 68, September Term 2016.  Opinion by Getty, J.

**WORKERS' COMPENSATION ACT — MD. CODE LAB. & EMPL. ART. § 9-610 (1991, 2008 REPL. VOL.) — OFFSET FOR PAYMENT OF BENEFITS THAT ARE "SIMILAR BENEFITS" TO WORKERS' COMPENSATION BENEFITS**

The Court of Appeals held that the legislative intent behind the statutory offset in Md. Code, Labor & Employment Article § 9-610 (1991, 2008 Repl. Vol.) is to prevent employees of a Maryland governmental unit or quasi-public corporation who are covered by both a pension plan and workers' compensation from receiving a double recovery for the same injury.  The Court of Appeals further held that language in Md. Code, Labor & Employment Article § 9-610 (1991, 2008 Repl. Vol.)  stating that "payment of the benefit by the employer satisfies, to the extent of the payment, the liability of the employer . . . for payment of similar benefits under this title," reflected a legislative intent that the statutory offset apply only to "comparable" benefits, which are "benefits accruing by reason of the same injury." *Newman v. Subsequent Injury Fund*, 311 Md. 721, 727 (1988).  The Court of Appeals clarified that a benefit that compensates an employee for wage loss is not necessarily a "similar benefit" subject to the statutory offset; the offset would not apply if a wage loss benefit was not awarded for the same injury as the workers' compensation benefit.

**WORKERS' COMPENSATION ACT — MD. CODE LAB. & EMPL. ART. § 9-610 (1991, 2008 REPL. VOL.) — OFFSET FOR PAYMENT OF BENEFITS THAT ARE "SIMILAR BENEFITS" TO WORKERS' COMPENSATION BENEFITS — APPLICATION TO ORDINARY DISABILITY RETIREMENT BENEFITS**

The Court of Appeals held that, as a matter of law, ordinary disability retirement benefits are "similar benefits" to workers' compensation benefits, and the statutory offset in Md. Code, Labor & Employment Article § 9-610 (1991, 2008 Repl. Vol.) applies, when the record reflects that the cause of the incapacity for which ordinary disability retirement benefits were awarded was the same workplace accidental injury or occupational disease that was the basis for the workers' compensation benefits.

**WORKERS' COMPENSATION ACT — MD. CODE LAB. & EMPL. ART. § 9-610 (1991, 2008 REPL. VOL.) — OFFSET FOR PAYMENT OF BENEFITS THAT ARE "SIMILAR BENEFITS" TO WORKERS' COMPENSATION BENEFITS — APPLICATION TO ORDINARY DISABILITY RETIREMENT BENEFITS — ORDINARY DISABILITY RETIREMENT BENEFITS AWARDED ON THE BASIS OF A PREEXISTING MEDICAL CONDITION**

In the instant case, the Maryland State Retirement and Pension System arguably found that petitioner's back and neck injuries were caused by his preexisting degenerative back

problems, whereas his temporary total disability benefits from the Workers' Compensation Commission were clearly awarded for a workplace accidental injury. However, the Court of Appeals noted that the two agencies apply different legal standards to determine whether a beneficiary is entitled to a disability benefit. Therefore, the Court of Appeals concluded that when a disability claimant suffers an injury involving a preexisting condition that is triggered or exacerbated by a work accident, the two agencies may award benefits for the same injury but find different causes for that injury. Consequently, the Court of Appeals held that in deciding whether a claimant's ordinary disability retirement benefits were awarded on the basis of the same injury for which he also received workers' compensation benefits, the Workers' Compensation Commission is not bound to prior agency findings as to causation. Instead, the Workers' Compensation Commission may consider any relevant evidence or argument submitted as to the basis for each benefit, which may include: letters or orders granting a benefit, information stated in a claimant's application for benefits, or evidence submitted to the agency, such as medical records or witness testimony.

Applying that standard to the evidence in the record, the Court of Appeals concluded that petitioner was paid ordinary disability retirement benefits and temporary total disability workers' compensation benefits on the basis of the same back and neck injuries. Therefore, the Court of Appeals held that the Workers' Compensation Commission's finding that the statutory offset in Md. Code, Labor & Employment Article § 9-610 (1991, 2008 Repl. Vol.) applied was correct, and that respondents are entitled to offset petitioner's ordinary disability retirement benefits against his temporary total disability benefits.

Circuit Court for Washington County
Case No.: 21-C-13-049084
Argued: March 3, 2017

IN THE COURT OF APPEALS

OF MARYLAND

No. 68

September Term, 2016

CHARLES C. REGER

v.

WASHINGTON COUNTY BOARD OF
EDUCATION ET AL.

Barbera, C.J.
Greene
Adkins
McDonald
Watts
Hotten
Getty

JJ.

Opinion by Getty, J.

Filed: August 4, 2017

On November 12, 2007, the petitioner, Charles Reger, Jr., was moving a cafeteria table while working as a custodian for respondent Washington County Board of Education ("Employer"), when the table fell on Mr. Reger, pinning him to the ground. Following the accident, Mr. Reger was diagnosed with significant injuries, primarily to his back and neck, and was unable to perform his custodial work. Mr. Reger thereafter sought and received two different sets of disability benefits from the Employer and respondent Maryland Association of Boards of Education Compensation Self-Insurance Fund ("Insurer"), each awarded by a different state agency: he was granted temporary total disability benefits by the Workers' Compensation Commission ("WCC" or "the Commission") and ordinary disability retirement benefits by the State Retirement Agency, the administrative arm of the Maryland State Retirement and Pension System ("MSRPS").[1]

Employer and Insurer (collectively, "Respondents") subsequently petitioned the WCC to offset Mr. Reger's ordinary disability benefits against his temporary total disability benefits pursuant to the statutory offset provision in Maryland Code (1991, 2008 Repl. Vol.), Labor and Employment Article ("LE") § 9-610.[2] The Commission agreed,

---

[1] *See State Retirement & Pension System*, Maryland Manual On-Line http://msa.maryland.gov/msa/mdmanual/25ind/html/63retir.html [https://perma.cc/K7S3-V3YR].

[2] LE § 9-610(a) provides,

(a)(1) Except for benefits subject to an offset under § 29-118 of the State Personnel and Pensions Article, if a statute, charter, ordinance, resolution, regulation, or policy, regardless of whether part of a pension system, provides a benefit to a covered employee of a governmental unit or a quasi-public corporation that is subject to this title under § 9-201(2) of this title or, in case of death, to the dependents of the covered employee, payment

finding that the Respondents were entitled to a credit for the ordinary disability benefits already paid to Mr. Reger in the amount of $54,486.50, with that credit to be applied to any "future Awards of indemnity" assessed against Respondents in favor of Mr. Reger.

Mr. Reger petitioned for judicial review of the WCC's decision before the Circuit Court for Washington County. After holding a hearing as to cross-motions for summary judgment, the circuit court granted summary judgment in favor of the Commission, holding that "[a]s a matter of law in this case, the benefits are indeed within the statute similar and therefore the statutory offset applies." Mr. Reger noted an appeal to the Court of Special Appeals from the circuit court's ruling and, in an unreported opinion, the Court of Special Appeals affirmed the judgment of the circuit court. Mr. Reger thereafter petitioned this Court for a writ of certiorari, which we granted.

The sole issue presented by this appeal is whether the WCC correctly applied LE § 9-610 to find that the Respondents were entitled to offset the ordinary disability benefits already paid to Mr. Reger against the temporary total disability benefits paid to him by the Respondents. We shall affirm the WCC's finding. Under the circumstances of this case, both sets of benefits were awarded to compensate Mr. Reger for the same back and neck injuries. Because both sets of benefits compensated Mr. Reger for the same injury, pursuant to LE § 9-610, the benefits were legally "similar benefits," and the statutory offset properly applied to prevent a double recovery for the same injury.

---

of the benefit by the employer satisfies, to the extent of the payment, the liability of the employer and the Subsequent Injury Fund for payment of similar benefits under this title.

# I.
# BACKGROUND

*The Work Accident*

For approximately 29 years, Mr. Reger worked as a custodian for the Washington County Board of Education. On November 12, 2007, while working at Williamsport High School, a large folding cafeteria table fell on Mr. Reger while he was moving it, pinning him to the ground. Mr. Reger suffered injuries to his neck, back, left leg, and left elbow. Immediately after the accident, Mr. Reger was unable to perform his regular duty custodial work, but was able to return to work on light-duty. His final day of work as a custodian was in May of 2008.

*The Initial Medical Treatment*

On February 29, 2008, roughly three and a half months after his work injury, Mr. Reger saw Dr. Thomas Larkin at Parkway Neuroscience and Spine Institute about his injuries. Mr. Reger's medical records from that visit indicate a diagnosis of "SPONDYLOLISTHESIS (738.4)."[3] Mr. Reger returned for a follow-up visit to Dr.

---

[3] Spondylolisthesis is a type of back injury involving the "forward movement of the body of one of the lumbar vertebrae on the vertebra below it, or on the sacrum." Steadman's Medical Dictionary 1813 (Tiffany Piper, et al., eds., 28th ed. 2006). The International Classification of Diseases, 9th Revision, Clinical Modification ("ICD-9-CM") was the official system of assigning codes to medical diagnoses and procedures for billing purposes in the United States in use until October 15, 2015. *International Classification of Diseases, Ninth Revision, Clinical Modification (ICD-9-CM)*, National Center for Health Statistics, Centers for Disease Control & Prevention, https://www.cdc.gov/nchs/icd/icd9cm.htm [https://perma.cc/4UVJ-J49V]. Under the version of ICD-9-CM in effect in 2008, diagnosis code 738.4 corresponds to "Acquired Spondylolisthesis." 2008 ICD-9-CM Diagnosis Code 738.4, Acquired Spondylolisthesis, http://www.icd9data.com/2008/Volume1/710-739/730-739/738/738.4.htm

Larkin's practice on March 19, 2008, where a second diagnosis of "CERVICAL STENOSIS (723.0)"[4] was added. Dr. Larkin saw Mr. Reger for additional follow-up visits on June 4, July 2, and September 10, 2008.

*The Workers' Compensation Claim*

Following the November 12, 2007 accident, Mr. Reger received initial temporary total disability payments from the Insurer from March 6, 2008, through July 15, 2008. On July 18, 2008, Mr. Reger, through counsel, filed a claim with the Workers' Compensation Commission based on injuries sustained in the accident. In his claim, Mr. Reger stated that the accident occurred when he was "moving [a] large cafeteria table—table fell on me and I fell to [the] floor hurting my back, neck, and hand and legs."

On November 7, 2008, the WCC held a hearing on Mr. Reger's claim. At that hearing, Mr. Reger's counsel provided the WCC with a surgical recommendation from a physician at the University of Maryland Medical Center that Mr. Reger undergo "lumbar[5] surgery," which would involve a "L5-S1 decompression with fusion and stabilization." On

---

[https://perma.cc/TZ8U-RU3Z]. However, the code may also be applied to degenerative spondylolisthesis. *Id.*

[4] "Stenosis" is defined as a "stricture" or "narrowing" of a body part, and "cervical" is defined as "relating to a neck." Steadman's Medical Dictionary 351, 1832 (Tiffany Piper, et al., eds., 28th ed. 2006). Under the version of ICD-9-CM in effect in 2008, diagnosis code 723.0 corresponds to "Spinal Stenosis in the Cervical Region." 2008 ICD-9-CM Diagnosis Code 723.0, Spinal Stenosis in Cervical Region, http://www.icd9data.com/2008/Volume1/710-739/720-724/723/723.0.htm [https://perma.cc/UP4S-PH2V].

[5] "Lumbar" can be defined as "relating to" the part of the lower back or sides "between the ribs and the pelvis." Steadman's Medical Dictionary 1121 (Tiffany Piper, et al., eds., 28th ed. 2006).

4

that basis, Mr. Reger's counsel requested that Mr. Reger continue to receive temporary total disability benefits until he could undergo the surgery. Counsel for the Employer and Insurer contested whether the proposed surgery was causally related to the November 12, 2007 accident and argued that Mr. Reger was capable of working.

In an attempt to prove a causal connection between the accident and the contemplated surgery, Mr. Reger's counsel asked him a series of questions during direct examination. Mr. Reger testified that he had never missed any time from work or sought any medical treatment for "any back problems" prior to the November 12, 2007 accident. When questioned about an earlier 2004 injury involving a file cabinet, Mr. Reger acknowledged receiving an MRI and going to "some physical therapy" as a result of that incident, but denied that the incident had resulted in any back problems. He also testified that he went back to performing custodial work after the 2004 injury, describing it as "very physical work" that included regular bending and lifting.

The WCC entered an order finding that Mr. Reger had reached maximum medical recovery and that the requested lumbar surgery was not causally related to the November 12 accident. On November 24, 2008, Mr. Reger filed a request for rehearing before the WCC. Attached as an exhibit, he provided a letter from his treating physician, Dr. Larkin, that stated,

> [Mr. Reger] had a pre-existing spondylolisthesis in which he managed to work effectively for years with this problem until he had an accident at work. This temporal relationship of his accident indicates to me that there is a reasonable degree of medical certainty that his current condition is a result of his accident at work.

The WCC denied Mr. Reger's request for a rehearing.

5

Thereafter, Mr. Reger timely sought judicial review of the WCC's decision in the Circuit Court for Washington County. A one-day jury trial was held on September 9, 2009. The jury returned a verdict finding that Mr. Reger's lumbar surgery was causally related to the November 12 accidental injury. On September 16, 2009, the circuit court vacated the order of the WCC and remanded the case to the WCC for entry of an order finding,

1      Mr. Reger has not attained maximum medical improvement with regard to his work-related back injury.
2      That Mr. Reger's need for back surgery is causally connected to the accidental injury of November 12, 2007; and
3      Mr. Reger was temporarily totally disabled from July 16, 2008 to September 9, 2009[.]

*The Application for Disability Retirement Benefits*

While Mr. Reger's petition for judicial review of the WCC decision that he had reached maximum medical recovery was pending before the Washington County circuit court, he sought benefits through a different avenue and filed an application with the State Retirement Agency for accidental disability retirement benefits on or about February 23, 2009. In the "Statement of Disability" section to be completed by the applicant, Mr. Reger was asked to describe his "disability or medical condition." His response indicated conditions to his lower back, neck, shoulder, left leg, and left hand. He also described how he could not physically perform certain functions of his job, including climbing steps or ladders, standing for a long time, lifting items, mowing grass, scrubbing doors, shoveling snow, etc. In the application, Mr. Reger's witness described the November 12 accident stating, "[Mr. Reger] was moving a folding table with assistance of [another custodian]

6

when table lost balance and fell on Mr. Reger's legs and put him to the floor, landing hard on his back."

As part of the application, Mr. Reger's treating physician, Dr. Larkin, signed a Physician's Medical Report and described Mr. Reger's medical history as including "cervical spinal stenosis" and "lumbosacral spondylosis,"[6] with "cervical pain that radiates into [his lower] shoulder [and] thoracic spine, and low back pain that radiates into [his lower] calf." Dr. Larkin further noted that Mr. Reger was unable to work at the time of the application.

On August 19, 2009, the Medical Board of the State Retirement Agency issued its written recommendation, which stated,

> It is the recommendation of the Medical Board that [Mr. Reger] *be approved ordinary disability* due to cervical spondylosis and stenosis lumbar spondylosis. The medical evidence submitted supports a conclusion that the member is permanently disabled and unable to perform his job duties.
>
> However, the Medical Board denied *accidental disability* since the evidence submitted concerning the accident did not prove that this event caused the permanent disability.

On September 15, 2009, the Disability Unit of the State Retirement Agency transmitted a letter to Mr. Reger accepting the Medical Board's recommendation, that Mr. Reger was "entitled to an <u>ordinary disability, due to Cervical Spondylosis and Stenosis Lumbar</u>

---

[6] "Lumbosacral spondylosis" can be defined as "stiffening and fixation of a joint" or "any lesion of the spine of a degenerative nature" affecting the "lumbar vertebrae [or] the sacrum." Steadman's Medical Dictionary 95, 1121, 1813 (Tiffany Piper, et al., eds., 28th ed. 2006).

7

Spondylosis." Mr. Reger's accidental disability claim, however, was denied based on the Medical Board's recommendation. The letter outlined three options for Mr. Reger,

1. Accept an ordinary disability retirement allowance and withdraw your claim for an accidental disability retirement allowance.

2. Accept an ordinary disability retirement allowance and pursue your claim for an accidental disability retirement allowance.

3. Accept a service retirement, if eligible or continue to receive your service retirement allowance and pursue your claim for an accidental disability retirement allowance.

On November 12, 2009, Mr. Reger submitted a letter of intent to the Medical Board Secretary electing the first option and withdrawing his accidental disability retirement claim. Mr. Reger began receiving ordinary disability benefits from the MSRPS on a payment schedule that began on his date of retirement, March 1, 2009.

*Lower Back Surgery*

On December 1, 2009, Mr. Reger presented to Dr. Charles Sansur for a surgical consultation and examination. Dr. Sansur wrote to Dr. Larkin, Mr. Reger's treating physician for his back and neck symptoms, and stated that Mr. Reger "was found to have a resultant spine injury from [the November 12, 2007] accident and has a diagnosis of a L5–S1 spondylolisthesis with pars fractures bilaterally." On March 10, 2010, Mr. Reger underwent lumbar surgery—a surgical fusion at L5-S1—and, thereafter, participated in rehabilitative treatment. At some point during the course of Mr. Reger's surgical or post-surgical treatment, Dr. Sansur gave him a permanent restriction on returning to work as a custodian due to the condition of his back and neck.

8

*Subsequent WCC Proceedings*

After Mr. Reger's surgery, a follow-up independent medical examination ("IME")—was conducted by orthopedic surgeon Robert A. Smith, M.D.[7]  In his IME report dated September 23, 2010, Dr. Smith indicated that Mr. Reger had reached maximum medical improvement from the "Grade I spondylolisthesis" resulting from his work accident.

Thereafter, Mr. Reger once again filed issues with the WCC, and on January 5, 2011, Mr. Reger appeared once more before the WCC.  At this hearing, Mr. Reger again testified at the WCC hearing that prior to the November 12, 2007 accident, he had never had any discomfort or sought treatment for a problem with his neck.  Mr. Reger requested the continuation of temporary total disability benefits, this time based upon a recommendation from Dr. Sansur for cervical spine and left elbow surgery.  Mr. Reger presented a report from Dr. Sansur, dated November 6, 2010, which stated,

> Mr. Charles Reger has a known problem with spinal stenosis in both the lumbar and cervical spine.  He also has an ulnar neuropathy.  While the accident in 2007 is not the exact cause of [Mr. Reger's] spinal stenosis, it is quite clear that such an incident certainly exacerbated his symptoms and resulted in him requiring further medical and surgical treatment.  While his lower back has been treated, the cervical spine and ulnar neuropathy appear to [be] progressing, and it is my feeling that these conditions have been worsened by the accident.  He continues to be unable to work.

---

[7] A party in a workers' compensation case "may schedule a medical examination of the claimant with a physician, psychologist, or psychiatrist chosen by the party," after providing reasonable notice in writing, in which case the claimant "shall appear for a scheduled medical examination."  Md. Code Regs. ("COMAR") 14.09.03.08(B).

The Employer and Insurer contended that the elbow and spine injuries for which Mr. Reger was seeking surgery were not causally related to his November 12, 2007 accident.

In an order dated January 10, 2011, the WCC found that Mr. Reger was entitled to temporary total disability from September 25, 2010, and continuing "until the completion of an independent neurosurgical evaluation and assessment."[8] The WCC found that the disability to Mr. Reger's elbow was not causally related to the November 12 accident and reserved ruling on whether the cervical spine injury was causally connected to the accident until the independent neurosurgical report was submitted. The parties engaged Kevin McGrail, M.D., to conduct another IME and prepare the neurosurgical report. On April 5, 2011, Dr. McGrail completed his report, which stated in pertinent part,

> The history, which I obtained from [Mr. Reger] in the office today, as well as the medical records reveal that [Mr. Reger] suffered a work-related accident which occurred on [November 12, 2007]. He was working as a custodian for the Board of Education in Washington County, Maryland. He was moving a large table when that table fell on him knocking him to the ground.
>
> Following this traumatic injury, [Mr. Reger] complained of pain and discomfort involving his neck, upper extremities, as well as his lower back. . . . His back pain and lower extremity pain persisted and became unmanageable with conservative measures . . . [S]urgery was recommended, and on [March 10, 2010] Mr. Reger underwent an instrumented lumbar spinal fusion at the L5-S1 level . . .

---

[8] The WCC may order that a claimant be examined, at the commission's expense "by the Commission's medical examiner or by some other physician, psychologist, or psychiatrist selected by the Commission." COMAR 14.09.03.08(A).

Mr. Reger also has a history of numbness, tingling[,] and pain in [his left arm] . . . [He] was found to have compressive neuropathy[9] of both the left ulnar and left median nerves . . .

The medical records and history I obtained from Mr. Reger did indicate that he suffered the aforementioned traumatic injury [on November 12, 2007], which resulted in neck and low-back pain [ ]. He tells me that prior to this time he did have some issues with pain and discomfort in the lumbar spine but it was not constant, much lower in intensity[,] and clearly seemed to be manageable with conservative measures. Although Mr. Reger's L5-S1 grade 2 spo[n]dylolithesis was congenital and degenerative, the accident seemed to have significantly aggravated this condition to the point where it became unmanageable with anything but a surgical procedure.

Based on his history, it does seem that the traumatic incident was an aggravating factor to both his back pain and his ultimate requirement for surgery. I do not think, however, that the accident has anything to do with the [left arm] ulnar and median neuropathy. . .

I think Mr. Reger has clearly reached a point of maximal medical recovery . . . I hold all of the above opinions to a reasonable degree of medical certainty.

After reviewing the neurosurgical report, the WCC denied coverage for Mr. Reger's cervical surgery on or about November 11, 2011.

Mr. Reger filed a petition for judicial review of that decision on December 14, 2011. Following another one-day jury trial on August 8, 2012, the WCC's order was vacated and the case was remanded to the WCC for entry of an order finding Mr. Reger's second proposed surgery to be causally related to the November 12, 2007 accidental injury.[10]

---

[9] "Neuropathy" can include "any disorder affecting any segment of the nervous system." Steadman's Medical Dictionary 1313 (Tiffany Piper, et al., eds., 28th ed. 2006).

[10] It appears that Mr. Reger's second petition for judicial review was limited solely to the issue of whether his second proposed surgery was causally related to his November 12, 2007 accidental injury.

11

*Request for Benefit Offset*

On October 23, 2013, the Employer and Insurer filed issues with the WCC arguing that, under LE § 9-610, the benefits paid for Mr. Reger's injury through workers' compensation should be offset by Mr. Reger's ordinary disability benefits. On November 8, 2013, another hearing was held before the WCC. Mr. Reger's counsel claimed at that hearing that the two benefits were "not at all [for] the same condition" and that "there is clear evidence that there is pre-existing [injury]." Mr. Reger's counsel further argued that when the State Retirement Agency granted Mr. Reger ordinary disability benefits and denied accidental disability benefits it was "essentially saying we don't believe this [was] accident related and we believe it is due to some other things" such as a "degenerative condition." And, he claimed that "the law is clear that there is no offset for ordinary [disability benefits]." Therefore, he contended that the WCC was bound by that State Retirement Agency determination that the benefits were for ordinary disability benefits and could not offset those benefits. Counsel for the Employer and Insurer countered that both benefits stemmed from the November 12, 2007 accidental injury, and that under LE § 9-610 the General Assembly clearly "want[ed] to prevent a public employee from receiving benefits from two sources for the same problem." By order dated November 13, 2013, the WCC found that the Employer and Insurer were entitled to an offset under LE § 9-610.

In that order, the WCC stated that Mr. Reger had been paid for three previous periods for which he had been granted temporary total disability benefits by the

12

Commission—from July 16, 2008 to September 9, 2009[11] (granted by order of the WCC after Mr. Reger's first successful petition for judicial review to the circuit court), from September 25, 2010 to January 14, 2011 (granted by order of the WCC on an interim basis following Mr. Reger's second claim for additional workers' compensation benefits until the WCC had the opportunity to review an independent neurosurgical evaluation and assessment), and from March 5, 2011 to July 28, 2013 (apparently[12] granted by order of the WCC sometime after Mr. Reger's second successful petition for judicial review to the circuit court). The Commission's order stated that the sum of Mr. Reger's temporary total disability benefits paid during all three periods was $91,125.86.

The Commission found that during all three periods in which Mr. Reger received temporary total disability benefits, he also received ordinary disability retirement benefits. And, the Commission found that the sum of the ordinary disability retirement benefits paid to Mr. Reger during those three periods was $62,808.68. Therefore, the Commission found that the Employer and Insurer were "entitled to a credit of $62,808.68 against future awards of indemnity" assessed against them by the WCC in favor of Mr. Reger.

---

[11] The WCC's order stated that Mr. Reger had been paid temporary total disability benefits from July 16, 2009 to August 30, 2009. However, the order from the Washington County circuit court in his first petition for judicial review had clearly stated that the WCC was directed to enter an order for temporary total disability benefits from July 16, 2008 to September 9, 2009. Thus, we assume that the difference in dates in the order was a clerical error by the Commission.

[12] An order granting Mr. Reger benefits from March 5, 2011 to July 28, 2013 is not contained in the record on appeal. However, the Respondents have not contested the WCC's statement that Mr. Reger was paid benefits for that period.

13

The Commission also found that Mr. Reger was entitled to receive temporary total disability benefits from January 15, 2011 to March 4, 2011 and July 29, 2013 to November 18, 2013.[13]  When adding the new periods of temporary total disability to the extant periods, Mr. Reger ultimately received temporary total disability for two periods: from July 16, 2009 to September 9, 2009, and from September 25, 2010 to November 8, 2013.  To reflect the newly added periods of Mr. Reger's temporary total disability, the Commission reduced the Employer and Insurer's $62,808.50 credit by $8322.28, leaving a credit balance of $54,486.50.  Consequently, until the remaining credit balance was exhausted, the Commission determined that Mr. Reger was not entitled to additional workers' compensation benefits.

*Appeal to Circuit Court from Benefit Offset Ruling*

Mr. Reger petitioned for judicial review of the WCC's decision on November 22, 2013 pursuant to LE § 9-737,[14] and requested a jury trial pursuant to LE § 9-745(d) ("On

---

[13] The basis for the WCC's grant of these additional temporary total disability benefits was not stated in the order.

[14] LE § 9-737 provides,

An employer, covered employee, dependent of a covered employee, or any other interested person aggrieved by a decision of the Commission . . . may appeal from the decision of the Commission provided the appeal is filed within 30 days after the date of the mailing of the Commission's order by:

(1) filing a petition for judicial review in accordance with Title 7 of the Maryland Rules;

(2) attaching to or including in the petition a certificate of service verifying that on the date of the filing a copy of the petition has been sent by first-class mail to the Commission and to each other party of record; and

14

a motion of any party filed with the clerk of the court in accordance with the practice in civil cases, the court shall submit to a jury any question of fact involved in the case"). Both parties filed motions for summary judgment and, on September 24, 2014, the circuit court held a hearing on the cross-motions for summary judgment.

At the summary judgment hearing, Mr. Reger's counsel argued that the ordinary disability benefits that Mr. Reger received were awarded for a permanent partial disability, and thus were dissimilar as a matter of law to his temporary and total disability benefits awarded through the WCC. When questioned by the circuit court judge as to why he likened ordinary disability benefits to permanent partial disability, Mr. Reger's counsel stated that they were equivalent "because Mr. Reger is not precluded from returning to work [in a light-duty job] by receipt of ordinary disability [benefits], whereas [if he receives] accidental disability [benefits], he may not do any work of any kind."

Mr. Reger's counsel also reiterated the argument made before the WCC that Mr. Reger's ordinary disability benefits were "based solely on his [pre-existing] spondylotic spinal changes, which is why the [State Retirement Agency] gave him ordinary disability, not accidental disability." The circuit court judge questioned him as to that claim,

| CIRCUIT COURT JUDGE: | . . . [I]n this case, you have the [S]tate [R]etirement [A]gency saying the board of trustees accepted the medical board's certification that [Mr. Reger was] entitled to an ordinary disability due to cervical spondylosis and stenosis lumbar spondylosis. |

---

(3) on the date of the filing, serving copies of the petition by first-class mail on the Commission and each other party of record.

15

| | |
|---|---|
| MR. REGER'S COUNSEL: | Right. |
| CIRCUIT COURT JUDGE: | Cervical and lumbar. |
| MR. REGER'S COUNSEL: | Yes. Back and neck. |
| CIRCUIT COURT JUDGE: | Same reports were provided, you know, I think Dr. Larkin said there was some pre-existing. There's also exacerbation that's also related to Workers [Compensation]. Same reports are submitted to the [S]tate [R]etirement [A]gency. Same reports are submitted to the [Workers' Compensation Committee,] right? |
| MR. REGER'S COUNSEL: | True. |

In response to Mr. Reger's arguments, counsel for the Employer and Insurer contended that Mr. Reger's November 12, 2007 work accident was the basis for his request for workers' compensation benefits as wells as his request for disability retirement benefits. And, counsel asserted that "the same physical incapacity" arising from the 2007 accident "formed the basis for both the Workers['] Compensation [Comission] award and the retirement award." Counsel noted that Mr. Reger had testified three times during prior proceedings before the WCC that he had never experienced physical problems with his neck or back in performing his job duties prior to the 2007 accident.

Counsel for the Employer and Insurer disagreed with Mr. Reger's counsel's claim that an award of ordinary disability retirement benefits is equivalent to permanent partial disability. He also disputed Mr. Reger's claim that the ordinary disability retirement benefits could not be offset as a matter of law,

> It doesn't matter whether [the retirement benefit] was accidental or ordinary. It matters whether or not the conditions for which he was granted both

16

benefits are the same. And they are. He cannot say that—I was granted these ordinary disability benefits because of spondylosis in his back and in his neck. He didn't even know he had it. . . . [Mr. Reger's] position that he should receive both ordinary disability [retirement] benefits and his Workers['] Compensation [Commission] benefits is the exact type of [ ] double-dipping that the [l]egislature intended to prevent when enacting [LE §] 9-610 and its predecessor [statutes].

After hearing the parties' respective arguments, the circuit court judge issued his summary judgment ruling on the record, stating,

> Now in the instant case, the same medical records were used to receive both the ordinary retirement disability payment as well as the Workers' Compensation awards in this case.
>
> The injury occurred November 12th, 2007. The Workers' Compensation claim [was] first filed May 27, 2008. That resulted in a [c]ircuit [c]ourt order where a jury reversed, as I recall, the Commission's order. It said the [proposed] back surgery was causally related to the November 12th, 2007 accident.
>
> And then September 15th, 2009, the state retirement agency accepted [Mr. Reger's] claim for ordinary disability retirement benefits based both on lumbar and cervical problems specifically due to cervical spondylosis and stenosis, lumbar spondylosis. And that's in the letter [from Dr. Larkin] that was attached to the papers. And, again, it's the same medical records for both claims.
>
> . . .
>
> So [ ] in using the *Reynolds* [*v. Board of Education of Prince George's County,* 127 Md. App. 648 (1999)] language, the ordinary [disability] retirement benefit in this case that was accepted by [Mr. Reger] is tantamount to a wage loss benefit for his position as a custodian. And it is analogous to the temporary total disability Workers' Compensation benefit, which is also a wage loss from his custodial position.
>
> Hence, as a matter of law in this case, I find that there is no [ ] genuine dispute as to any material facts. As a matter of law in this case, the benefits are indeed within the statute similar and therefore the statutory offset applies.

17

Later that same day, the circuit court entered a written order granting summary judgment in favor of the Employer and Insurer.[15]  On October 17, 2014, Mr. Reger filed a notice of appeal to the Court of Special Appeals.

*Appeal to the Court of Special Appeals*

On August 5, 2016, the Court of Special Appeals issued an unreported opinion that affirmed the circuit court's grant of summary judgment in favor of the Employer and Insurer.  *Reger v. Washington Cty. Bd. of Educ. et al.*, No. 1937 Sept. Term 2014, 2016 WL 4173032 (Md. Ct. Spec. App. 2016).  The Court of Special Appeals stated that the circuit court "focused on the correct legal question and correctly concluded that both sets of benefits were awarded to compensate for wages lost." *Id.* at *10.  The intermediate appellate court agreed with the circuit court that "the ordinary [disability] retirement benefit in this case that was accepted by [Mr. Reger] is tantamount to a wage loss benefit for his position as a custodian," that was "analogous to the temporary total disability Workers' Compensation benefit, which is also a wage loss from his custodial position." *Id.*  The Court of Special Appeals also noted that the circuit court had found that "Mr. Reger submitted both of his claims based on the same medical condition and physical incapacity, and submitted the same evidence to both the State Retirement Agency and the WCC." *Id.*  The Court of Special Appeals concluded that "[w]here, as here, both benefits serve as a wage loss benefit tied to the same underlying injury and incapacity, the offset

---

[15] On September 30, 2014, the circuit court entered an amended order to correct a typographical error in the original order.

18

provision in LE § 9-610 must be applied to ensure only a single recovery for the single injury." *Id.*

Mr. Reger thereafter petitioned this court for a writ of certiorari, which we granted on November 22, 2016. 450 Md. 421 (2016). After granting certiorari, we also granted a motion of county officials representing various local jurisdictions and boards in Maryland to file an *amici curiae* brief in this matter.[16] *See* Maryland Rule 8-511(a).

Mr. Reger presents a single issue for our review, which we have rephrased:

Did the Workers' Compensation Commission err in finding that the ordinary disability benefits granted to Mr. Reger by the State Retirement Agency are legally similar to the temporary total disability benefits granted to Mr. Reger by the Commission, such that the statutory offset under Maryland Code, Labor & Employment Article § 9-610 applies?[17]

That issue can be broken down into three parts:

A. What is the legislative intent behind the statutory offset provision now contained in LE § 9-610 and, in particular, the intent behind the "similar benefits" language in the provision?

B. As a matter of law, can ordinary disability benefits be "similar benefits" to workers' compensation benefits?

---

[16] The *amici curiae* brief was submitted by: the county attorneys or counsel representing Montgomery County, Anne Arundel County, Baltimore County, Prince George's County, Harford County, and Saint Mary's County; the legal and policy counsel for the Maryland Association of Counties; and, counsel for the Board of Education of Prince George's County.

[17] In his brief to this Court, Mr. Reger presented the following question for our review:

When a state employee who is disabled by an on the job injury is awarded ordinary retirement disability benefits for a different injury, should the [S]tate be excused from paying workers' compensation benefits for the on the job injury?

19

C. If the answer to question B is "yes," are the ordinary disability benefits paid to Mr. Reger by the MSRPS "similar benefits" to the temporary total disability benefits paid to Mr. Reger by the WCC?

After first setting forth the applicable standard of review and summarizing the contentions of the parties, we shall discuss each of these questions in sequence. *See infra*, Part III.(A)-(C).

## II.
## STANDARD OF REVIEW

Section 9-745 of the Labor and Employment Article governs appeals of decisions by the Workers' Compensation Commission. That statute sets out two paths by which an aggrieved claimant may challenge a decision of the Commission:

> A party dissatisfied by the action of the Commission may seek review in a circuit court by either proceeding on the record made before the Commission (much like judicial review of the final action of most state administrative agencies) or receive a new evidentiary hearing and decision before a jury (much like an original civil complaint brought in a circuit court).

*Balt. Cty. v. Kelly*, 391 Md. 64, 67-68 (2006). Here, Mr. Reger requested a jury trial before the circuit court, placing his petition to the circuit court for judicial review of the decision of the WCC on the second path of LE § 9-745. Had his case reached a jury, he would therefore have received an "'essentially' *de novo* trial."[18] *Id.* at 74 (quoting *Richardson v. Home Mut. Life Ins. Co.*, 235 Md. 252, 255 (1964)).

However, prior to the case being submitted to a jury, both parties agreed that there was no dispute of material fact and that the case could be appropriately resolved through

---

[18] In *Baltimore County v. Kelly*, 391 Md. at 74-77, we discussed the "essentially *de novo* trial" standard and its implications for parties' burden of proof before a circuit court in an appeal from the Workers' Compensation Commission.

summary judgment. And, after reviewing the parties' cross-motions for summary judgment and holding a hearing as to those motions, the circuit court granted summary judgment in favor of the Employer and Insurer as to the benefits offset issue, ruling as a matter of law that Mr. Reger's ordinary disability benefits and temporary total disability benefits were "similar" and that, consequently, "the statutory offset [in LE § 9-610] applies." The circuit court's holding was then affirmed by the Court of Special Appeals. *Reger*, No. 1937 Sept. Term 2014, 2016 WL 4173032 at *10.

"In an appeal from judicial review of an agency action, we review the agency's decision directly, not the decision of the Circuit Court or the Court of Special Appeals." *Hollingsworth v. Severstal Sparrows Point, LLC*, 448 Md. 648, 654 (2016). Although generally, "'the decision of the Commission is presumed to be *prima facie* correct,' this presumption does not 'extend to questions of law, which we review independently.'" *Id.* at 654-55 (quoting *Elms v. Renewal by Andersen*, 439 Md. 381, 391 (2014) (quoting LE § 9-745(b) and *Montgomery Cnty. v. Deibler*, 423 Md. 54, 60 (2011))). *See also Johnson v. Mayor & City Council of Balt.*, 430 Md. 368, 376-77 (2013) (holding when an appellate court reviews a circuit court's grant of summary judgment as to an appeal from a decision of the Workers' Compensation Commission where "[t]he parties agree on the facts," and the sole legal issue on appeal is the interpretation of a statute, the appropriate standard of review is *de novo*).

In this case, the WCC's decision that is the sole issue on appeal involves the meaning and application of a statute, which is a question of law subject to *de novo* review. In interpreting a statute, we adhere to this Court's well-settled principles of statutory

construction. The Court defers to "the policy decisions enacted into law by the General Assembly." *Phillips v. State*, 451 Md. 180, 196 (2017). "We assume that the legislature's intent is expressed in the statutory language and thus our statutory interpretation focuses primarily on the language of the statute to determine the purpose and intent of the General Assembly." *Id.*

> We begin our analysis by first looking to the normal, plain meaning of the language of the statute, reading the statute as a whole to ensure that no word, clause, sentence or phrase is rendered surplusage, superfluous, meaningless or nugatory. If the language of the statute is clear and unambiguous, we need not look beyond the statute's provisions and our analysis ends. Occasionally we see fit to examine extrinsic sources of legislative intent merely as a check of our reading of a statute's plain language. In such instances, we may find useful the context of a statute, the overall statutory scheme, and archival legislative history of relevant enactments.

*Id.* at 196-97 (quoting *Douglas v. State*, 423 Md. 156, 178 (2011) (quoting *Evans v. State*, 420 Md. 391, 400, 23 A.3d 223 (2011))).

When this Court interprets an ambiguous or unclear statutory provision that is part of the Workers' Compensation Act, "additional principles of interpretation enter the equation." *Hollingsworth*, 448 Md. at 655 (quoting *Montgomery Cty. v. Deibler*, 423 Md. 54, 61 (2011)). We must interpret the provision in light of the purpose of the Act, which we have stated is "to protect workers and their families from hardships inflicted by work-related injuries by providing workers with compensation for loss of earning capacity resulting from accidental injury arising out of and in the course of employment." *Id.* (quoting *Elms v. Renewal by Andersen*, 439 Md. 381, 399 (2014)). Thus, because the Act is a "remedial statute," to the extent that the plain language of the Act is ambiguous or unclear, it must be "construed as liberally in favor of injured employees as its provisions

22

will permit in order to effectuate its benevolent purposes." *Id.* (quoting *Elms*, 439 Md. at 399). However, we may not "stifle the plain meaning of the Act, or exceed its purposes, so that the injured worker may prevail." *Id.* (quoting *Elms*, 439 Md. at 399). Similarly, "when the language is plain" we cannot "create an ambiguity that does not exist in order to interpret the Act more favorably to the claimant." *Id.* at 655-56.

## III.
## DISCUSSION

Maryland Code, Labor & Employment Article § 9-610 ("LE § 9-610") provides, in pertinent part,

(a)(1) Except for benefits subject to an offset under § 29-118 of the State Personnel and Pensions Article, if a statute, charter, ordinance, resolution, regulation, or policy, regardless of whether part of a pension system, provides a benefit to a covered employee of a governmental unit or a quasi-public corporation that is subject to this title under § 9-201(2) of this title or, in case of death, to the dependents of the covered employee, **payment of the benefit by the employer satisfies, to the extent of the payment, the liability of the employer and the Subsequent Injury Fund for payment of similar benefits under this title.**

(2) If a benefit paid under paragraph (1) of this subsection is less than the benefits provided under this title, the employer, the Subsequent Injury Fund, or both shall provide an additional benefit that equals the difference between the benefit paid under paragraph (1) of this subsection and the benefits provided under this title.

(3) The computation of an additional benefit payable under paragraph (2) of this section shall be done at the time of the initial award and may not include any cost of living adjustment after the initial award.

* * *

(c)(1) The Commission may:

      (i) determine whether any benefit provided by the employer is equal to or greater than any benefit provided for in this title; and

23

(ii) make an award against the employer or the Subsequent Injury Fund or both to provide an additional benefit that equals the difference between the benefit provided by the employer and the benefits required by this title.

(2) A claim that comes under this section is subject to the continuing powers and jurisdiction of the Commission.

(emphasis added).

Mr. Reger contends that, as a matter of law, workers' compensation benefits PAID by the WCC should never be offset under LE § 9-610 by ordinary disability retirement benefits paid by the MSRPS because, according to Mr. Reger, "the two benefits are paid for different purposes." Mr. Reger insists that ordinary disability benefits "do not compensate for work-related injuries," and therefore are not a "similar benefit" that should be offset pursuant to LE § 9-610. Mr. Reger contrasts ordinary disability benefits with accidental disability benefits, which the State Retirement Agency awards for accidental workplace injuries and are thus, according to Mr. Reger, "perfectly analogous to workers' compensation benefits." Mr. Reger also maintains that the legislative history of LE § 9-610, in particular an amendment to the statute enacted in 1997, indicates that the General Assembly intended the offset to apply solely to accidental disability benefits. Therefore, he claims that the Commission, the circuit court, and the Court of Special Appeals erred in holding that Mr. Reger's ordinary disability benefits were "similar benefits" to his temporary total disability benefits, and thus subject to the statutory offset.

Even if ordinary disability benefits were subject to the offset in LE § 9-610, Mr. Reger also contends that the offset should not apply in his case. He asserts that the State Retirement Agency awarded him ordinary disability retirement benefits "based solely on

24

[ ] preexisting degenerative back problems." And, he further claims that the Medical Board of the State Retirement Agency "very specifically found Mr. Reger was not disabled because of his [accidental] injury of November 12, 2007" that was the basis for the temporary total disability benefits he was awarded by the WCC. Because, in his view, his ordinary disability benefits and temporary total disability benefits were granted based upon entirely distinct and separate injuries, he contends that "they are not similar benefits within the meaning of [LE § 9-610]."

Mr. Reger insists that the Court of Special Appeals failed to recognize that the State Retirement Board awarded and paid him ordinary disability benefits based upon his degenerative back injuries and instead improperly focused on the fact that he had applied for accidental disability benefits based on the same November 12, 2007 accidental injury that was the basis for his WCC benefits. He claims that the Court of Special Appeals has thereby "punished him for asking for[,] but not being paid[,] accidental disability retirement benefits by denying him his workers' compensation benefits."

In contrast, the Respondents maintain that cases interpreting LE § 9-610 and its predecessor statutes have made clear that the General Assembly intended to ensure a "single recovery for a single injury" for public employees, and to prevent double payment from the public purse to a governmental employee who is covered by both a pension or other benefit plan and the workers' compensation statute. And, Respondents contend that LE § 9-610 was not limited to offsetting only accidental disability benefits, as it is clear from the language of the statute that "there was never any intent by the Legislature to limit [that] offset to pension benefits, let alone one particular type of pension benefits."

25

Respondents also offer a policy argument that construing the offset to apply solely to accidental disability benefits would increase instances of double recovery, as employees could easily avoid the offset by choosing to apply for ordinary disability benefits instead of accidental disability benefits from the State Retirement Agency, while also applying for workers' compensation benefits from the WCC for the same injury.

Instead, Respondents assert that the only limiting language in LE § 9-610 is that the offset only applies to "similar benefits." Respondents claim that, in this case, the ordinary disability benefits paid to Mr. Reger by the MSRPS are "similar benefits" to his workers' compensation benefits and, consequently, the Commission, the circuit court, and the Court of Special Appeals did not err in holding that the offset in LE § 9-610 applied. Respondents note that in *Newman v. Subsequent Injury Fund* this Court held that service retirement benefits awarded solely based on age and length of service had "no relation whatsoever to [an employee's accidental] injury and the disability resulting therefrom," and therefore were not "similar" to workers' compensation benefits under the predecessor statute to LE § 9-610. 311 Md. 721, 724 (1988). Respondents contend that "[i]mplicit in the *Newman* rationale is that when there is a relationship and both the [workers' compensation benefit] and the pension benefit result from or were triggered by the same injury, incapacity, or disability, they are legally 'similar.'" Respondents also urge us to rely upon the holding in *Reynolds v. Board of Education of Prince George's County*, where the Court of Special Appeals upheld the application of the LE § 9-610 offset when an employee received both ordinary disability benefits and workers' compensation benefits based in part upon the Court of Special Appeals' holding that both benefits were awarded based on "a single

26

medical condition" and the "same physical incapacity" that occurred when the employee's preexisting asthmatic condition was triggered by her exposure to diesel fuel and fumes while at work. 127 Md. App. 648, 655 (1999).

Respondents claim, in this case, that both sets of benefits awarded to Mr. Reger stemmed from a disability caused by his November 12, 2007 accident which, similarly to *Reynolds*, involved an "acute stimulus" or triggering event (Mr. Reger's November 12, 2007 work accident) that exacerbated a preexisting condition (Mr. Reger's degenerative back disease). In support of that claim, Respondents note that Mr. Reger "never experienced any physical limitation in the performance of his job duties prior to the November 12, 2007 accident," and that he submitted the same medical records and relied upon the November 12, 2007 accident before both the WCC and the State Retirement Board.

Finally, Respondents criticize Mr. Reger's reliance on the Medical Board recommendations and State Retirement Agency's decision to award Mr. Reger ordinary disability benefits, and to deny him accidental disability benefits. They insisted that the Medical Board's recommendation and State Retirement Agency's decision do not suggest that those benefits are not similar to Mr. Reger's temporary total disability benefits, noting that "[i]rrespective of the label given the disability benefit provided by the [State Retirement Agency] . . . it is without question that the dual benefits [Mr. Reger] received as a result of a disability triggered by the same event are subject to offset under [LE] § 9-610."

27

The amici curiae agree with the Respondents that "the same injury can result in an **ordinary** disability retirement [benefit] and a compensable workers' compensation claim, but may not result in an **accidental** disability award." And, the amici agree with the Respondents that, in such a case, the statutory offset in LE § 9-610 should apply. However, the amici also urge this Court to make a somewhat broader ruling than that urged by the Respondents. The amici claim that "[t]o ensure that a governmental employer is not required to pay double benefits for the same injury," this Court should hold that the offset in LE § 9-610 applies "to ordinary disability [retirement] benefits to the same extent that it applies to accidental disability [retirement] benefits when the reason for the disability payment includes the same body part for which workers' compensation benefits are awarded."

In order to resolve whether the WCC properly applied the statutory offset provision, we shall first determine the legislative intent behind that provision, in particular the intent behind the "similar benefits" language. Then, we shall determine whether, as a matter of law, a payment by a governmental employer of ordinary disability benefits could be deemed a "similar benefit" to a payment of temporary total disability benefits. Then, we shall decide whether, under the circumstances of this case, Mr. Reger's ordinary disability benefits were a "similar benefit" to his temporary total disability benefits.

### A. The Legislative Intent Behind the Statutory Offset Provision Now Contained in LE § 9-610 and the "Similar Benefits" Language in That Provision

In *Blevins v. Baltimore County*, 352 Md. 620 (1999), this Court traced the legislative history and intent behind the offset provision now contained in LE § 9-610 in detail,

including the legislative intent behind the "similar benefits" language. In that case, we noted that "[l]ocal government employees have been dealt with specially since the first enactment of the workers' compensation law in 1914." *Id*. at 635. The original Workers' Compensation Act, 1914 Md. Laws, ch. 800, "required employers who employed workmen in 'extra-hazardous employments' to provide the compensation as provided for by the Act" for injuries or deaths arising in the scope of employment. *Id.* And, "[s]ection 34 of the Act provided that, whenever the State or a county or municipality engaged in extra-hazardous work in which workmen were employed for wages, the Act was applicable 'thereto.'" *Id.* at 635-36.

However, the Act also stated that "[w]henever, and so long as, by State law, City Charter, or Municipal Ordinance, a provision equal or better than that given under the terms of this Act is made for municipal employees injured in the course of employment such employee shall not be entitled to the benefits of this Act." Acts 1914, ch. 800, s. 34. In *Nooe v. City of Baltimore*, cited approvingly by this Court in *Blevins*, Chief Judge Orth of the Court of Special Appeals characterized Section 34 as reflecting that, from the time of the adoption of the Act, it has been "the policy of the General Assembly, as expressed in its legislative enactments, that an employee of the government shall not receive workmen's compensation benefits in addition to other benefits furnished by the employer accruing by reason of an accidental injury arising out of and in the course of employment." 28 Md. App. 348, 349 (1975), *cert. denied*, 276 Md. 748 (1976). Judge Orth concluded that the General Assembly's concern as to "governmental authorities being obliged to pay benefits

29

to an employee twice as a result of the same injury," was also expressed in the preamble to the original 1914 Act, which stated in pertinent part,

> Whereas, in addition thereto, the State and its taxpayers are subjected to a heavy burden in providing care and support for such injured workmen and their dependents, which burden should, in so far as may be consistent with the rights and obligations of the people of the State, be more fairly distributed as in this Act provided; . . .

*Id.* at 352 (quoting Acts 1914, ch. 800).

The original statutory provision expressed in Section 34 of the 1914 Act, although "expanded from time to time to add new categories of governmental, or quasi-governmental, employees," remained in force until 1970, "when, as part of a bill deleting the requirement that employment be 'extra-hazardous' to be covered, the entire provision dealing with non-military State and local government personnel was repealed." *Blevins*, 352 Md. at 636. *See* 1970 Md. Laws, ch. 741. Although the reason for the appeal was "not entirely clear[,]" *see Blevins*, 352 Md. at 636, it was apparently in reaction to this Court's ruling in *Montgomery County v. Kaponin*, 237 Md. 112 (1964). In *Blevins*, we summarized the holding of *Kaponin*,

> *Kaponin* involved a county police officer who, as the result of a job-related injury, suffered a 75% permanent partial disability. He retired and, pursuant to the county pension plan, began receiving disability benefits of $260/month. Thereafter, the officer filed for workers' compensation benefits and received an award of $25/week, which, on a dollar-for-dollar basis, was less than the retirement benefit. The county sought judicial review, arguing that, by virtue of [Acts 1914, ch. 800, s. 34, by that time recodified as Article 101, § 33 of the Chapter Laws of Maryland], it was not liable. This Court viewed § 33 not as an offset provision, however, but as a qualification statute designed to give municipal employers an alternative to providing workmen's compensation by enacting legislation affording to their employees benefits equal to or greater than those provided by the Workmen's Compensation Law. The comparison, we said, was not to be on a case-by-case, dollar-for-

30

dollar, basis, but rather on a law-by-law basis. The county pension plan at issue, while affording Officer Kaponin a higher weekly benefit, did not provide medical benefits or partial or permanent partial benefits, which were afforded under the workers' compensation law. Accordingly, we viewed the provisions of the county pension law as not being equal to or greater than the provisions of the Workers' Compensation Act and held that the officer could collect under both laws.

*Blevins*, 352 Md. at 636 to 637 (internal citations and quotation marks omitted). We noted in *Blevins* that the significance of the *Kaponin* holding was that it largely circumvented the General Assembly's intent that employees injured in a work accident who were provided with benefits from municipal employers that were more generous than those provided by the Act should not have a double recovery, because "[i]t is questionable whether many, or any, local pension plans could satisfy the comparability standard imposed by *Kaponin*; pension plans—even disability retirement plans—do not ordinarily provide medical benefits." *Id.* at 637. *See also Nooe*, 28 Md. App. at 352 (noting that "the manifest purpose of [Acts 1914, ch. 800, s. 34, subsequently recodified at Article 101, § 33 of the Chapter Laws of Maryland] was to a large extent circumvented by the *Kaponin* holding").

However, "[w]hatever may have been the legislative purpose" of the repeal of the provision in 1970, a successor provision was enacted by the General Assembly in 1971 as an emergency measure. *Blevins*, 352 Md. at 637. *See* 1971 Md. Laws, ch. 785. That provision, subsequently codified at Section 33(c) of Article 101 of the Maryland Code (1957, 1979 Repl. Vol.) provided, in pertinent part,

> (c) Whenever by statute, charter, ordinances, resolution, regulation or policy adopted thereunder, whether as part of a pension system or otherwise, **any benefit or benefits** are furnished employees of (public) employers . . ., the benefit or benefits when furnished by the employer shall satisfy and discharge pro tanto or in full . . ., the liability or obligation of the employer .

31

. . for any benefit under this article. If any benefits so furnished are less than those provided for in this article the employer . . . shall furnish the additional benefit as will make up the difference between the benefit furnished and the **similar benefit** required in this article.

(d) The Commission may determine whether any benefit provided by the employer is equal to or better than any benefit provided for in this article . . .

(emphasis added). As Judge Orth noted in *Nooe*, that successor provision was plainly a dollar-for-dollar offset provision, providing for "offsets of workmen's compensation benefits against the benefits otherwise furnished by a [public] employer," as opposed to a "a qualification statute such as the Court of Appeals found the former statute to be" in *Kaponin*. 28 Md. App. at 352. And, for the first time, the General Assembly included a comparison between the employer-provided benefit and a "similar benefit" required under the Workers' Compensation Act.

We noted in *Blevins* that it was "not entirely clear from the face of the 1971 enactment what the Legislature had in mind when it inserted the limiting word 'similar' only near the end of [§ 33(c)], in the provision dealing with the situation where the alternative benefit [provided by the governmental employer] is less than the compensation benefit [provided under the Worker's Compensation Act], and omitted it elsewhere—in the general set-off provision and in the provision authorizing the Commission to determine whether the alternative benefit is, in fact, equal to or better than the compensation benefit." 352 Md. at 638. However, we also noted that additional legislative history suggests that the inclusion of the "similar benefits" language was a purposeful act by the General Assembly. Specifically, in 1976, the General Assembly "rewrote the part of § 33 dealing with military personnel, adding a provision similar to the 1971 law relating to local

32

governmental employees—that, if any benefits provided by the Federal Government were less than those provided under the workers' compensation law, the State should furnish 'the additional benefit in order to make up the difference between the benefit provided by the Federal Government and the **similar benefit** required by this article." *Id.* (quoting 1976 Md. Laws, ch. 762) (emphasis added).

The first cases that arose from the 1971 law "dealt with situations in which the alternative benefit that the [governmental employer] sought to set off was, in fact, a disability retirement benefit" that was awarded for the same injury for which the worker also sought worker's compensation benefits and, thus, "the issue of 'similarity' did not arise." *Id.* In *Nooe*, the Court of Special Appeals held that when a Baltimore City police officer received a special disability benefit under a Baltimore City retirement program for an accidental injury sustained in the course of his employment that was more than the worker's compensation benefits to which he was entitled, "the liability and obligation of [Baltimore City] for the workmen's compensation benefits were satisfied and discharged" by the payment of the special disability benefit. 28 Md. App. 353-56.

In *Mazor v. State Department of Correction*, a prison guard suffered severe injuries after being stabbed and beaten by an inmate, resulting in his being unable to return to work. 279 Md. 355, 357 (1977). The prison system determined the guard was totally and permanently incapacitated and awarded him an accidental disability pension by the State equivalent to $5380 per year. *Id.* Subsequently, he filed a claim for workers' compensation benefits, was found by the Commission to have sustained a permanent 60% disability as a result of the incident, and was awarded compensation benefits amounting to $3380 per

33

year. *Id.* at 357-58. On appeal from the Commission's order, a circuit court concluded that the Department of Corrections could set off the disability pension benefit under § 33(c) and, because the disability pension benefit was greater than the workers' compensation benefit, that it was discharged from liability for the workers' compensation benefit.

On appeal, we affirmed the circuit court's ruling. We concluded that the statute provided for the offset of benefits by both employers and insurers standing in the position of the employer, and that the offset could be applied for injuries that did not cause the employee's death. *Id.* at 361-63. In reaching those conclusions, we considered both the workers' compensation benefits and pension disability benefits awarded to the prison guard as "facet[s] of an overall system of wage-loss protection," which had as its "underlying principle" the goal of restoring "to the worker a portion of wages lost by physical disability, unemployment, or old age." *Id.* at 363. We concluded that "although two or more causes of wage loss may coincide, the benefits need not cumulate, for the worker experiences but one wage loss." *Id.* (citing 4 Arthur Larson, Law of Workmen's Compensation §§ 97.00, 97.10 (1976)). We rejected the prison guard's constitutional challenges to the offset provisions on similar grounds, concluding that the General Assembly could rationally have determined that "since an employee suffers only one wage loss, he should receive the equivalent of only one disability benefit." *Id.* at 365. *See also Feissner v. Prince George's Cty.*, 282 Md. 413, 421 (1978) (holding similarly).

Similarly, in *Frank v. Baltimore County*, we held that pension benefits received by a disabled police officer from a contributory pension plan were "benefits provided by the employer" within meaning of § 33(c) and that, because those benefits were equal to or

34

better than any worker's compensation benefits to which the officer was entitled, the offset provision applied. 284 Md. 655, 657 (1979). Although we did not rely upon the "similar benefits" language in the statute to reach that conclusion, we stated that "[u]pon reading section 33 the scheme that unmistakably emerges is that the General Assembly wished to provide only a single recovery for a single injury for government employees covered by both a pension plan and workmen's compensation." *Id.* at 659. And, we again described the offset provision as "consistent with the generally recognized policy underlying all wage-loss legislation" that under a "'logical system'" an employee who experiences only one period of wage loss "'should receive only one wage loss benefit.'" *Id.* (quoting 4 Arthur Larson, The Law of Workmen's Compensation § 97.10, at 18-9 (1979) (footnote omitted)).

In *Oros v. Mayor & City Council of Baltimore*, the Court of Special Appeals considered the cases of three Baltimore City police officers injured in the course of their employment, who were paid full sick leave salary from the City during their absence from work. 56 Md. App. 685, 686-87 (1984). Recognizing that the statutory offset in § 33(c) applied to any attempt to claim worker's compensation benefits for temporary total disability in addition to the sick leave benefits, the officers "bowed to the inevitable" and declined to claim their temporary total disability benefits. *Id.* at 687. However, when the officers reached maximum medical recovery, they sought permanent partial disability benefits, which the Commission granted. *Id.* at 687-88. The City, noting that the compensation benefit for temporary total disability benefits was only two-thirds of the officers' salary, reasoned that "the one-third overage it paid built up a credit in the nature

35

of a savings account that the City could offset against its future obligation for permanent partial disability." *Id.* at 688.

The Court of Special Appeals rejected the City's offset argument, relying upon the "similar benefits" language in § 33(c)—apparently the first Maryland court to rely on that language in a case involving the offset provision. The Court of Special Appeals recognized that "the overriding theme" in prior cases where the offset had been applied "was the determination of legislative intent of § 33(c) which would minimize the burden on the public treasury that would result from duplicating benefits to public employees." *Id.* at 689. However, the intermediate appellate court distinguished temporary total disability benefits, which it viewed as "solely wage-loss benefits," from permanent partial disability benefits, which it regarded as "more in the nature of earning capacity impairment benefits." *Id.* at 690. The Court of Special Appeals noted that permanent partial disability benefits "are based purely on the medical condition of the employee after maximum improvement has been reached and ignore wage loss entirely," and may be paid "not only after the employee returns to work, but also if his wages were increased," or even "absent [any] loss of wages or earning capacity." *Id.* The intermediate appellate court concluded that by including the "similar benefits" language in § 33(c), the General Assembly intended to "preclude double-dipping into the same pot of comparable benefits" and that the sick leave benefits awarded as a wage loss benefit were not comparable to the permanent partial disability benefits awarded to compensate for loss of earning capacity. *Id.* at 694.

We affirmed the result reached by the Court of Special Appeals, but on different grounds, and without relying upon the "similar benefits" language in the statute. *Mayor &*

36

*City Council of Baltimore v. Oros*, 301 Md. 460 (1984). We held that, under the workers'

compensation law of the time, "an injured worker (or his dependents) is entitled to receive

seriatim the benefits for each of the separate disabilities as were caused by the nature and

extent of his injury," and that a benefit awarded by a governmental employer that is

sufficient to offset one workers' compensation benefit may not also be used to offset a

separate workers' compensation benefit. *Id.* at 470.

The first case in which this Court squarely addressed the meaning and impact of the

"similar benefit" language in § 33 was *Newman v. Subsequent Injury Fund*, 311 Md. 721,

(1988). In that case, a county employee sustained a work-related injury, and was awarded

permanent partial disability benefits by the WCC. *Id.* at 723. The employee did not seek

a separate disability benefit from her employer, but retired on ordinary service retirement.

*Id.* The retirement benefits were less than the workers' compensation benefits, and the

county sought to offset them pursuant to § 33(c). After the Commission denied the offset,

the county prevailed before a circuit court and the Court of Special Appeals.

This Court, however, reversed the judgment of the Court of Special Appeals. We

held that although the phrase "similar benefit" appears only in one phrase near the end of

the statute, it also "qualifies the provision at the beginning of the section as to the benefits

furnished employees by employers" because there was no "'reasonable distinguishing

purpose to suggest that ["similar"] was not intended to be implicit in the foregoing

sentences.'" *Id.* at 724 (quoting *Oros*, 56 Md. App. at 689). We therefore concluded that

in order for the statutory offset to apply, "the two benefits received must be 'similar.'" *Id.*

We concluded that the two benefits at issue in the case were not similar and therefore the offset did not apply, explaining,

> Newman was awarded workmen's compensation because of the impairment of the industrial use of her body as a result of her work-related injury. On the other hand, it appears that she was entitled to the benefits under the retirement plan merely because she had elected to retire after attaining a prescribed age and 20 years service with the county. The payment of these benefits had no relation whatsoever to her injury and the disability resulting therefrom. Age and length of service were not a prerequisite for her entitlement to workmen's compensation benefits; anatomical disability was not a prerequisite for her entitlement to the retirement benefits. In short, her retirement payments were an age and length of service benefit; her workmen's compensation award was a disability benefit. The two benefits were not similar and not comparable. Therefore, the offset provisions of § 33(c) were not applicable.

*Id.*

We proceeded to discuss prior cases in which this Court had addressed the offset provision—including *Mazor*, *Frank*, and *Oros*—and although we noted that we had never previously discussed the "similar benefits" language, we concluded that "the tenor of [§ 33(c)] as reflected in our opinions is that the offsetting benefits be 'similar' ones." *Id.* at 724-26. We also noted that in several previous cases concerned with § 33(c) we had looked to 4 Arthur Larson, The Law of Workmen's Compensation § 97.10 (1979),

> Wage-loss legislation is designed to restore to the worker a portion, such as one-half to two-thirds, of wages lost due to the three major causes of wage-loss: physical disability, economic unemployment, and old age. The crucial operative fact is that of wage loss; the cause of the wage loss merely dictates the category of legislation applicable. Now if a workman undergoes a period of wage loss due to all three conditions, it does not follow that he should receive three sets of benefits simultaneously and thereby recover more than his actual wage. He is experiencing only one wage loss and, in any logical system, should receive only one wage-loss benefit.

38

*Id.* at 726-27 (footnote omitted). However, we concluded that the previous cases in which § 33 was held to apply "were all decided in the context of dual benefits **accruing by reason of the same injury**, that is, two benefits being paid stemming from the same cause." *Id.* at 727 (emphasis added). We therefore determined that §33(c) "focuses only on dual recoveries for a single on-the-job injury" and "does not encompass setoffs for every type of wage-loss benefit available as Larson attempts to do." *Id.* We further stated that "[i]t is our statute which governs, not Larson's generalizations." *Id.*

Summarizing the broad holding of the case, we stated in *Newman* that the legislative intent behind the offset provision was "to preclude double-dipping into the same pot of *comparable* benefits." *Id.* at 728 (quoting *Oros*, 56 Md. App. at 694 (emphasis added)). But, "[t]he corollary is, that when the benefits are dissimilar, the setoff provisions of § 33(c) do not apply." *Id.*

In *Fikar v. Montgomery County*, we held that the §33(c) statutory offset between workers' compensation benefits and a county-sponsored disability retirement plan applied "when the workers' compensation benefits are paid for vocational rehabilitation." 333 Md. 430, 431 (1994). We stated that it was "luminously clear" that the General Assembly had enacted the offset provision to ensure "a single recovery for a single injury for government employees covered by both a pension plan and workmen's compensation." *Id.* at 435 (internal citations and quotation marks omitted). Applying our construction of the statute in *Newman*, we noted that "[i]n order for the statutory offset of § 33(d)[19] to come into play,

---

[19] Article 101 § 33(c) of the Maryland Code (1957, 1985 Repl. Vol., 1991 Cum. Supp.), was renumbered as § 33(d) by Ch. 559 of the Acts of 1989. Cases occurring before the

however, the benefits received under the pension plan and as workers' compensation must be 'similar.'" *Id.*

We noted that the petitioner in *Fikar* "urge[d] us to disregard the fact that both her vocational rehabilitation benefits and her disability retirement benefits arose out of the same, single injury, and to focus instead on the general purpose of each of the types of benefits." *Id.* at 437. Specifically, the petitioner "assert[ed] that disability retirement benefits are 'lost wage' benefits, intended to compensate a worker for her loss of earning capacity" and that "[v]ocational rehabilitation benefits, on the other hand, are intended to 'rehabilitate' an injured worker and return her to the work force, according to [the petitioner]." *Id.* We agreed with the petitioner about the overall objective of vocational rehabilitation, but stated that she "failed to recognize the composite nature of the vocational rehabilitation benefits in the workers' compensation scheme," including both vocational services and a cash payment. *Id.* at 437-38. We held that the vocational services provided to the petitioner were "clearly intended to prepare [her] to return to the workplace," and were therefore dissimilar to her county-sponsored disability benefits and not subject to the offset. *Id.* at 438. However, we concluded that petitioner received the vocational cash payment benefits "because of the same injuries sustained in the same accident which occurred in the course of her employment" and that those payments were therefore similar to her disability payments and subject to the offset. *Id.* at 438-39. *See also Polomski v.*

---

July 1, 1989 effective date of the amendment refer to § 33(c) rather than § 33(d). The two provisions are virtually identical. *See Fikar*, 333 Md. at 434 n.4; *Polomski v. Mayor & City Council of Balt.*, 344 Md. 70, 80 n.10 (1996).

40

*Mayor & City Council of Balt.*, 344 Md. 70, 80-81 (1996) (discussing the history of the offset in Art. 101, § 33(d) as relevant to the Court's interpretation of a separate statutory offset provision for firefighters, and holding that it was "unmistakably clear" that the General Assembly intended in § 33(d) to ensure "that injured government employees covered by both a pension plan and the [Workers' Compensation] Act receive only a single recovery for a single injury" and that "similar benefits for the same injury trigger the offset provision of [ ] § 33(d)" while "[d]issimilar benefits [ ] render the offset provision inapplicable").

In 1991, "the General Assembly enacted the Labor and Employment Article as part of the ongoing code revision process." *Blevins*, 352 Md. at 641. As part of that revision, the offset provision previously codified at Article 101 § 33(d) was recodified as LE § 9-610. After the recodification, LE § 9-610(a) read as follows:

> (a)(1) If a statute, charter, ordinance, resolution, regulation, or policy, regardless of whether part of a pension system, provides a benefit to a covered employee of a governmental unit or a quasi-public corporation that is subject to this title under § 9–201(2) of this title or, in case of death, to the dependents of the covered employee, payment of the benefit by the employer satisfies, to the extent of the payment, the liability of the employer and the subsequent injury fund for payment of benefits under this title.
>
> (2) If a benefit paid under paragraph (1) of this subsection is less than the benefits provided under this title, the employer, the Subsequent Injury Fund, or both shall provide an additional benefit that equals the difference between the benefit paid under paragraph (1) of this subsection and the benefits provided under this title.
>
> (3) The computation of an additional benefit payable under paragraph (2) of this section shall be done at the time of the initial award and may not include any cost of living adjustment after the initial award.

The newly recodified statute lacked the crucial "similar benefit" language of its predecessor. This Court addressed that discrepancy in *Blevins*, 352 Md. 620. In the second of two consolidated cases in that appeal,[20] a county claimed that due to the 1991 rewriting of the statute and the removal of the "similar benefit" language, an employee's service retirement benefits based upon age and length of service were subject to the offset. *Id.* at 628-29.

This Court discussed the legislative history of the offset provision in detail, including our holding in *Newman* that the offset should be limited to "similar" benefits awarded on the basis of the same injury so as to prevent a double recovery for the same injury. *Id.* at 635-41. We noted the long-standing principle that "a change in a statute as part of a general recodification will ordinarily not be deemed to modify the law *unless the change is such that the intention of the Legislature to modify the law is unmistakable.*" *Id.* at 642 (quoting *Duffy v. Conaway*, 295 Md. 242, 257 (1983). We held that this Court "must presume that the General Assembly was aware of our decision in *Newman* when it enacted the 1991 law," and "would therefore have been aware . . . that the only benefits that a county was entitled to set off against a workers' compensation award were those that were similar to the compensation benefits—those which, if not set off, would permit a double

---

[20] The first of the two consolidated cases in *Blevins* involved a situation where a county employee had been granted both accidental disability retirement benefits and workers' compensation benefits, but the workers' compensation benefits were awarded "for a weekly period prior to his retirement, when he was not receiving and was not entitled to receive any offsetting retirement benefits." *Blevins*, 352 at 627. We concluded that because "there was no overlap" between the two sets of benefits, the statutory offset did not apply. *Id.*

recovery for the same injury." *Id.* Concluding that there was no evidence of legislative intent to overturn the *Newman* decision, we held that "it is evident that the General Assembly did not intend to make any substantive change to the law in deleting the word 'similar.'" *Id.* at 644.

In 1997, prior to our holding in *Blevins*, but pre-dating the issuance of the WCC decisions at issue in that case and therefore not discussed in that opinion, the General Assembly amended LE § 9-610 to add a qualifying clause to the first sentence of LE § 9-610(a), stating that the offset applies for all benefits awarded to governmental employees or their dependents "[e]xcept for benefits subject to an offset under § 29-118 of the State Personnel and Pensions Article ("SP")." 1997 Md. Laws ch. 279. That qualifying clause has remained in force since 1997. However, the same law that added the qualifying clause also amended SP § 29-118(a) to read as follows,

> (a)(1) Except as otherwise provided in this subsection, this section applies to a retiree and any designated beneficiary.
>
> (2)(i) This section does not apply to a retiree of the Employees' Pension System or the Employees' Retirement System who receives a disability retirement benefit as a former employee of a county board of education or the Board of School Commissioners of Baltimore City or a designated beneficiary of that retiree.
>
> (ii) A retiree of the Employees' Pension System or the Employees' Retirement System who receives a disability benefit as a former employee of a county board of education or the Board of School Commissioners of Baltimore City or a designated beneficiary of that retiree is subject to § 9-610 of the Labor and Employment Article.

43

1997 Md. Laws ch. 279. Thus, under the statutory scheme created by the amendment, which remains in effect today,[21] a retiree who was employed by a county board of education who receives a disability benefit through that employer remains subject to the offset provision in LE § 9-610, and not the offset in SP § 29-118.[22]

Finally, in 1999, in apparent response to our holding in *Blevins*, the General Assembly once again amended LE § 9-610 to add the word "similar" back to the statute. 1999 Md. Laws ch. 340. The stated purpose of the amendment was to "clarify[ ] that certain workers' compensation benefits should be offset only for a payment of certain disability retirement benefits." *Id.*[23]

---

[21] Since 1997, SP § 29-118 has been amended so that it not only does not apply to retirees or their beneficiaries who receive disability benefits as a former employee of a county board of education, but to any retirees formerly employed by a county government, *i.e.*, a "participating governmental unit," and their beneficiaries. *See* SP § 29-118(a)(2)

[22] In their original form in the 1997 amendment, the offset provisions in LE § 9-610 and SP § 29-118 were not substantively different: SP § 29-118(b) provided that the MSRPS should reduce any "disability retirement provision" granted to a retiree covered "by any related workers' compensation benefits," so long as the workers' compensation benefits were paid while the employee continued to receive a pension and were awarded for "an accidental personal injury or occupational disease arising out of and in the course of the retiree's employment by a participating employer." 1997 Md. Laws ch. 279. However, unlike LE § 9-610, the offset provision in SP § 29-118(b) expressly provided that "[a] retirement allowance may not be reduced to be less than the sum of the retiree's annuity and the amount authorized to be deducted for health insurance premiums." But, in the current version of SP § 29-118, the difference between the two offset provisions is more pronounced—under SP § 29-118(b), the offset for workers' compensation benefits applies only to "an accidental or special disability retirement benefit."

[23] In the 2017 annual legislative session, a cross-filed bill was introduced before the House of Delegates and the Senate to amend LE § 9-610 to exempt ordinary disability retirement benefits from the statutory offset. *See* House Bill 344, 2017 Leg., 437th Sess.; Senate Bill 751, 2017 Leg., 437th Sess. However, in each chamber, the bill did not pass the relevant committee to which it was assigned.

We distill the following three principles from the above-described legislative history of LE § 9-610, and the cases that have applied and clarified the statutory offset provision. First, the overall legislative intent behind the offset provision now contained in LE § 9-610 was "that the General Assembly wished to provide only a single recovery for a single injury for government employees covered by both a pension plan and [workers'] compensation," and to thereby prevent employees from receiving a double recovery for the same injury. *Fikar*, 333 Md. 435 (quoting *Frank*, 284 Md. at 659).

Second, as clarified in *Newman*, the specific language in the statute that "payment of the benefit by the employer satisfies, to the extent of the payment, the liability of the employer . . . for payment of **similar benefits** under this title" reflects a legislative intent that the offset apply only to "comparable" benefits, which are "**benefits accruing by reason of the same injury**." 311 Md. at 727 (emphasis added). *See also Fikar*, 333 Md. at 439 (holding that the statutory offset applied because cash payments the petitioner was paid as part of her vocational rehabilitation benefits were awarded "because of the same injuries sustained in the same accident which occurred in the course of her employment" that was also the basis for her disability pension benefits); *Polomski*, 344 Md. at 81 (holding that "similar benefits for the same injury trigger the offset provision of Art. 101, § 33(d) [later recodified at LE § 9-610]" whereas "[d]issimilar benefits [ ] render the offset provision inapplicable"); *Blevins*, 352 Md. at 642 (noting that pursuant to our holding in *Newman*, "the only benefits that a county was entitled to set off against a workers' compensation award were those that were similar to the compensation benefits—those which, if not set off, would permit a double recovery for the same injury"). When benefits

45

are not traceable to the same injury, they are dissimilar, and the statutory offset does not apply. *Newman*, 311 Md. at 728.

Third, although early cases discussing the statutory offset provision suggested it should apply to offset workers' compensation benefits against any other benefit that compensates the employee for wage loss, this Court explicitly rejected that rationale in *Newman*, emphasizing that "our statute focuses only on dual recoveries for a single on-the-job injury" and "does not encompass setoffs for every type of wage-loss benefit available." *Id.* at 727.

### B.     Whether, As a Matter of Law, Ordinary Disability Benefits Can Be "Similar Benefits" to Workers' Compensation Benefits

We shall apply these principles to Mr. Reger's first contention that, as a matter of law, workers' compensation benefits awarded by the WCC should never be offset under LE § 9-610 by ordinary disability retirement benefits granted by the State Retirement Board to a governmental employee. Mr. Reger insists that "the two benefits are paid for different purposes" and that because ordinary disability benefits "do not compensate for work-related injuries," those benefits are therefore not a "similar benefit" to workers' compensation benefits that should be offset pursuant to LE § 9-610. Mr. Reger contrasts ordinary disability benefits with accidental disability benefits, which he asserts are awarded for accidental workplace injuries and are thus "perfectly analogous to workers' compensation benefits." However, under the principles set forth in *Newman* and the other cases described above, the "purpose" for which ordinary disability benefits are awarded—whether to compensate for lost wages, or for loss of future earning capacity, or for some

46

other purpose—is entirely irrelevant to our analysis of whether the statutory offset in LE § 9-610 can apply to offset those benefits against a workers' compensation award. Instead, the only relevant inquiry is whether ordinary disability benefits can, as a matter of law, be "similar" to workers' compensation benefits—meaning that the two sets of benefits were awarded as a recovery for the same injury or, in other words, stemmed from the same cause.

In his brief, Mr. Reger also asserts that the 1997 amendment to LE § 9-610 "indicates that legislature believed the 'similar benefits' in [LE] § 9-610 were limited to accidental disability benefits." Mr. Reger relies upon a fiscal note from the Department of Fiscal Services and a house committee floor report, which refer to the purpose of the 1997 amendment as providing for the offset of workers' compensation benefits against an "accidental disability benefit" paid to the retiree. However, as described above, that amendment modified the offset provision in SP § 29-118 to state that a retiree who was employed by a county board of education who receives a disability benefit through that employer remains subject to the offset provision in LE § 9-610. Thus under the plain language of the 1997 amendment, the General Assembly intended that the offset in LE § 9-610 still apply to retirees of a county board of education or their beneficiaries.[24] And, as this Court has consistently held, even prior to the 1999 amendment that once again added the word "similar" to the statute, the plain meaning of LE § 9-610 was to prevent a double

---

[24] As noted earlier in this opinion, after the 1997 amendment, SP § 29-118(a) was subsequently modified once again and now provides that the statutory offset in LE § 9-610—and not the separate offset provision in SP § 29-118(b)—applies to any retiree employed by a county agency when the county participates in the state retirement system, and not just to retirees of county boards of education.

recovery for the same injury by applying an offset to **any** benefit that is "similar" to workers' compensation benefit also received by the employee, *i.e.*, when both sets of benefits were awarded to compensate the employee for the same injury. *See e.g.*, *Blevins*, 352 Md. at 638-41; *Polomski*, 344 Md. at 80; *Fikar*, 333 Md. at 435; *Frank*, 284 Md. at 659. The 1997 amendment did not add or delete language from LE § 9-610 that would change that plain legislative intent or limit the offset solely to accidental disability retirement benefits. And, the General Assembly has not subsequently amended the statute to limit the scope of the offset provision.[25] Therefore, we are not persuaded by Mr. Reger's reliance upon the fiscal note and house committee floor report.

In order to determine whether ordinary disability benefits can be awarded on the basis of the same injury as workers' compensation benefits, we shall examine their eligibility criteria set by statute. As to ordinary disability retirement benefits, SP § 29-105(a) provides that,

> The Board of Trustees [of the Maryland State Retirement and Pension System] shall grant an ordinary disability retirement allowance to a member if:

---

[25] As previously noted, bills were introduced in the General Assembly in 2017 that would have exempted ordinary disability retirement benefits from the statutory offset in LE § 9-610, but those bills did not pass out of committee and were not enacted into law. *See supra* n.19. We have cautioned that "the failure of a single bill in the General Assembly may be due to many reasons, and thus is not always a good indication of the Legislature's intent." *Coleman v. Soccer Ass'n of Columbia*, 432 Md. 679, 693 (2013) (quoting *Moore v. State*, 388 Md. 623, 641 (2005)). However, we have also noted that "under some circumstances, the failure to enact legislation is persuasive evidence of legislative intent." *Id.* (quoting *Moore*, 623 Md. at 641). Under these circumstances, we view the General Assembly's decision not to pass the proposed 2017 legislation as additional evidence of the General Assembly's intent that LE § 9-610 may apply to ordinary disability retirement benefits.

48

> (1) the member has at least 5 years of eligibility service; and
>
> (2) the medical board certifies that:
> > (i) the member is mentally or physically incapacitated for the further performance of the normal duties of the member's position;
> > (ii) the incapacity is likely to be permanent; and
> > (iii) the member should be retired

The statute does not mandate that the Medical Board or the State Retirement Agency, the administrative arm of the MSRPS, must determine the cause of the physical incapacity of the employee. Instead, they must only determine that the employee is physically unable to perform his normal duties, and that his incapacitation is likely to be permanent and should result in retirement.

In contrast, temporary total disability benefits "are those paid to a[n] injured worker who is wholly disabled and unable to work because of the injury." *Buckler v. Willett Const. Co.*, 345 Md. 350, 356 (1997) (internal citations and quotation marks omitted). They may be awarded on the basis of either "an accidental personal injury or an occupational disease." LE § 9-618. Similarly, other workers' compensation benefits are awarded on the basis of a workplace accidental injury or occupational disease. *See e.g.*, LE § 9-614 (temporary partial disabilities); LE § 9-625 (permanent partial disability); LE § 9-635 (permanent total disability).

As ordinary disability benefits may be awarded for **any** mental or physical injury that renders the employee unable to perform the normal duties of his position, those benefits certainly could be awarded on the basis of the same workplace accidental injury or occupational disease that would support an award of workers' compensation benefits.

49

Therefore, we hold that if the record reflects that the cause of the incapacity for which ordinary disability retirement benefits were awarded was the same workplace accidental injury or occupational disease that was the basis for a workers' compensation award, the two sets of benefits are "similar" and the offset in LE § 9-610 applies.

Our holding is consistent with the statutory purpose of the offset provision to prevent a double recovery for the same injury. We agree with the Respondents that Mr. Reger's position that we should restrict the offset solely to accidental disability benefits is contrary to the statutory purpose because it would increase instances of double recovery. As governmental employees may choose to apply only for ordinary disability retirement benefits from the MSRPS, such a ruling would incentivize them to do so, knowing that they could also obtain a second recovery for the same injury from the WCC that would not be subject to the statutory offset.

### C. Whether the Ordinary Disability Benefits Paid to Mr. Reger by the MSRPS Are "Similar Benefits" to the Temporary Total Disability Benefits Paid to Mr. Reger by the WCC

Although we have held that ordinary disability benefits may be "similar benefits" to workers' compensation benefits when both sets of benefits are awarded based on the same injury, we must still determine whether Mr. Reger's ordinary disability benefits were on the basis of the same injury as his temporary total disability benefits. Mr. Reger focuses our attention on the Medical Board's recommendation and State Retirement Agency decision to deny him accidental disability benefits but grant him ordinary disability benefits. The Medical Board recommendation stated,

50

It is the recommendation of the Medical Board that [Mr. Reger] *be approved ordinary disability* due to cervical spondylosis and stenosis lumbar spondylosis. The medical evidence submitted supports a conclusion that the member is permanently disabled and unable to perform his job duties.

However, the Medical Board denied *accidental disability* since the evidence submitted concerning the accident did not prove that this event caused the permanent disability.

Mr. Reger maintains that when the Medical Board denied his claim for accidental disability retirement benefits, it "very specifically found [that] Mr. Reger was not disabled because of his [accidental] injury of November 12, 2007." The State Retirement Agency subsequently sent a letter to Mr. Reger accepting the Medical Board's recommendation, and stating that Mr. Reger was "entitled to an ordinary disability, due to Cervical Spondylosis and Stenosis Lumbar Spondylosis," but denying him accidental disability benefits. Mr. Reger claims that letter shows that the State Retirement Agency awarded him ordinary disability benefits "based solely on [ ] preexisting degenerative back problems," and not the November 12, 2007 accident.

In contrast, the Respondents contend that the State Retirement Agency did not find that Mr. Reger's ordinary disability benefits were awarded for injuries that are separate and distinct from the injuries he sustained as a result of his November 12, 2007 accidental injury, for which he received temporary total disability benefits. And, Respondents claim that other evidence in the record, especially the fact that Mr. Reger made similar claims and submitted similar evidence before both the WCC and State Retirement Agency, show that both sets of benefits awarded to Mr. Reger stemmed from the same injury.

51

*1. The State Retirement Agency Did Not Make an Express Finding That the November 12, 2007 Accident Did Not Cause Mr. Reger's Disability, But May Have Found That the Proximate Cause of His Back and Neck Injuries Was His Preexisting Back and Neck Conditions*

Contrary to Mr. Reger's assertions, neither the Medical Board nor the State Retirement Agency ever expressly stated that they were denying accidental disability benefits based on a finding that Mr. Reger was not disabled as a result of the November 12, 2007 accident. Instead, the Medical Board stated only that "the evidence submitted concerning the accident did not prove that this event caused the permanent disability." Just as for ordinary disability benefits, the criteria for accidental disability retirement benefits are set in statute. However, the criteria are significantly more stringent for accidental disability benefits. SP § 29-109(b) provides,

(b) Except as provided in subsection (c)[26] of this section, the Board of Trustees [of the Maryland State Retirement and Pension System] shall grant an accidental disability retirement allowance to a member if:

(1) the member is totally and permanently incapacitated for duty **as the natural and proximate result of an accident that occurred in the actual performance of duty** at a definite time and place without willful negligence by the member; and

(2) the medical board certifies that:

(i) the member is mentally or physically incapacitated for the further performance of the normal duties of the member's position;
(ii) the incapacity is likely to be permanent; and
(iii) the member should be retired.

---

[26] Subsection (c) of SP § 29-109 provides that for members of the Law Enforcement Officers' Pension System, instead of the "natural and proximate cause" standard, the Board should consider whether the injury arose "out of or in the course of the actual performance of duty." Subsection (a) states that the provisions of SP § 29-109 do not apply to the State Police Retirement System.

(emphasis added).

Thus, the Medical Board's recommendations and State Retirement Agency's decision may have simply reflected that Mr. Reger presented insufficient evidence to prove that his back injury was the "natural and proximate result" of the November 12, 2007 accident, but presented clear evidence that he was permanently incapacitated. Under those circumstances, the State Retirement Agency lacked the authority to award him accidental disability benefits for his injuries because he had not met his burden of proof—even if, in fact, his injuries were the natural and proximate cause of the accident. But it could, and did, award him ordinary disability retirement benefits, which can be awarded for any incapacitating injury, even lacking proof or evidence as to causation.[27]

However, an equally plausible interpretation of State Retirement Agency's decision to award Mr. Reger ordinary disability benefits is that the agency believed that the back and neck injuries he suffered were caused by preexisting conditions, and were not directly attributable to his November 12, 2007 accident. As Mr. Reger points out, the Medical Board's recommendation and State Retirement Agency decision stated that Mr. Reger was entitled to receive ordinary disability "due to" his preexisting back and neck conditions of cervical spondylosis and stenosis lumbar spondylosis.

---

[27] Notably, Mr. Reger was explicitly offered the opportunity to challenge the State Retirement Agency's decision. One of the options offered to him in the letter informing him of the decision was to "[a]ccept an ordinary disability retirement allowance and pursue your claim for an accidental disability retirement allowance." He elected not to pursue that option, and withdrew his claim for accidental disability benefits.

53

*2. Even If the State Retirement Agency and WCC Ascribed Different Causes to Mr. Reger's Back and Neck Injuries, That Does Not Imply That The Agencies Awarded Him Benefits for Separate And Distinct Injuries*

Even if the State Retirement Agency did, in fact, award Mr. Reger ordinary disability benefits instead of accidental disability benefits based upon a finding that his incapacity to work was proximately caused by his pre-existing back problems rather than the November 12, 2007 accident, that finding would not necessarily imply that he sustained two separate and distinct injuries. As we shall explain, because the State Retirement Agency applies a different legal standard when making disability benefit determinations than the WCC applies when deciding whether to award temporary total disability benefits, a single injury may result in the denial of accidental disability benefits but the grant of temporary total disability benefits.

In *Courtney v. Board of Trustees of Maryland State Retirement System*, we interpreted the "natural and proximate cause" standard in the predecessor statute to SP § 29-109(b), and stated that an accidental injury under the statute "does not include unexpected results not produced by accidental causes," and that "[a]n unexpected result (the incapacitating injury) attributable to a preexisting condition is not, therefore, an accidental injury." 285 Md. 356, 363 (1979) (internal citations and quotation marks omitted). Thus, a claimant seeking accidental disability retirement benefits who also suffers from preexisting conditions must show that his injury and resultant incapacity were caused by the work accident, as opposed to a the natural degeneration or progression of the preexisting condition. *See e.g., Courtney*, 285 Md. at 364-65 (affirming State Retirement Agency decision to deny accidental disability benefits on the basis of the agency's finding

54

that an employee's "nervous breakdown and mental disability (were) attributable to a preexisting condition of paranoia-schizophrenia"); *Eberle v. Balt. Cty.*, 103 Md. App. 160, 174-75 (1995) (holding that under a Baltimore City code provision that was identical to the current version of SP § 29-109(b)(1), "[b]ased on the medical reports that were riddled with references to a preexisting degenerative arthritis problem in addition to hypertension and a chronic overweight problem, it was not error for the [county agency] to conclude that Eberle's disability was not the natural and proximate result of the accidental injuries he suffered"); *Ahalt v. Montgomery Cty.*, 113 Md. App. 14, 27 (1996) (holding that under a Montgomery County code provision that awarded a disability benefit if it was the "natural and proximate result" of an accident, occupational disease, or condition aggravated in the performance of duty, the county employee was not entitled to receive the benefit, because there was "substantial evidence from which [the county's merit board] could conclude that appellant's incapacity was the natural and proximate result of his underlying osteoarthritic condition, [rather than] the natural and proximate result of the aggravation of the condition arising from the performance of his duties").

In contrast, temporary total disability benefits are to be awarded "without regard to pre-existing disease or infirmity." *Electrical General Corp. et al. v. LaBonte*, No. 69, September Term, 2016, Slip. Op. at 20 (quoting *Martin v. Allegany Cty. Bd. of Cty. Comm'rs*, 73 Md. App. 695, 700 (1988)). Instead, the WCC is limited to looking solely to "the final [workplace] accident contributing to the disability" and determining if it is sufficient basis to award temporary total disability benefits. *Id.*

Given the disparate standards for awarding the two benefits, particularly that the WCC is **not permitted** to consider whether an employee's accidental workplace injury was caused by a preexisting "disease or infirmity" when awarding temporary total disability benefits, it is perfectly possible for the WCC to award temporary total disability benefits on the basis of a workplace injury that only exacerbated or triggered a preexisting back injury. But, although in such a case the WCC would be barred by law from considering any relation between the injury and the preexisting medical condition, no such restriction applies to the State Retirement Agency. Consequently, when evaluating the same set of facts, the State Retirement Agency may well determine that it was the natural progression or degeneration of the preexisting condition, and not the accident, that was the natural and proximate cause of the injury, and grant the employee ordinary disability benefits instead of accidental disability benefits. Critically, in such a situation, although the WCC and State Retirement Agency may reach different conclusions as to the cause of the employee's injury—because each agency applies a different legal standard—both sets of benefits would be awarded for the same overall injury.

That conclusion is further bolstered by the Court of Special Appeals' holding in *Reynolds v. Board of Education of Prince George's County*, 127 Md. App. 648 (1999). In *Reynolds*, the appellant was employed by the Board of Education of Prince George's County as a bus driver. *Id.* at 650. The appellant "was exposed to diesel fuel and its fumes while operating a bus, and as a result of the exposure, began to suffer from a variety of health problems including headaches, respiratory difficulties, and skin irritations." *Id.* She filed a claim with the WCC alleging that she was disabled as the result of an occupational

56

disease, and ultimately was awarded permanent partial disability benefits "as the result of a work-related occupational disease resulting from exposure to diesel fuel." *Id.* at 650-51. Thereafter, the appellant applied for accidental disability benefits "as the result of her health problems resulting from exposure to diesel fuel and fumes." *Id.* at 651. The Medical Board "denied appellant's claim for accidental disability retirement benefits but granted ordinary disability retirement benefits . . . based on a finding of chronic asthma with an allergic reaction to fuel and diesel fumes." *Id.* Appellant appealed the denial of accidental disability benefits, but the Medical Board's decision was upheld by an administrative law judge and the Board of Trustees of the MSRPS. *Id.* "As a result, appellant was denied accidental disability retirement benefits but was awarded ordinary disability retirement benefits." *Id.*

The WCC determined that the employer was not entitled to offset the ordinary disability benefits against the workers' compensation benefits because, in the Commission's view, they were not "similar" benefits. *Id.* The employer appealed to the circuit court and, after employer filed a motion for summary judgment, the circuit court reversed the WCC and held that the statutory offset in LE § 9-610 applied. *Id.* at 652. The employee subsequently appealed to the Court of Special Appeals, which initially upheld the circuit court in an unreported opinion. *Id.* However, in light of our holding in *Blevins* clarifying the meaning of LE § 9-610, we vacated that judgment and remanded for reconsideration. *Id.* at 653.

Following that remand, the Court of Special Appeals issued a reported opinion, in which it held that "the ordinary disability retirement benefits awarded to appellant are

57

similar to the workers' compensation permanent partial disability benefits awarded to appellant, and the offset provision applies." *Id.* at 655. The Court of Special Appeals reasoned that, based on the facts of the case, "there was a single medical condition caused by appellant's exposure to diesel fuel while suffering from an asthmatic condition" that was the basis for both benefits awards. *Id.* The intermediate appellate court noted that "[a]ppellant claimed the same medical condition and physical incapacity and submitted the same evidence to both the medical board and the Commission." *Id.* And, the Court of Special Appeals explained that workers' compensation law "recognizes that an occupational disease may be compensable, and in fact, the Commission awarded compensation in this case." *Id.* In contrast, it noted that "[t]he State Retirement and Pension System awards disability retirement benefits for an accidental injury but does not recognize a work-related occupational disease," but may award ordinary disability retirement benefits for an occupational disease. *Id.* Having explained that the fact that the benefits were awarded was merely a result of the different legal standards applied by the WCC and the State Retirement Agency, the Court of Special Appeals emphasized that the statutory offset should still apply because "the same physical incapacity on the part of appellant formed the basis for the workers' compensation award and for the ordinary disability retirement award." *Id.* The Court of Special Appeals in *Reynolds* also offered an alternative rationale for why the statutory offset should be applied, stating that "[t]he ordinary disability retirement benefit is tantamount to a wage loss benefit," and therefore is "similar to a workers' compensation award." *Id.*

58

We agree with the Court of Special Appeals' statement in *Reynolds* that the statutory offset should apply when "the same physical incapacity . . . formed the basis for the workers' compensation award and for the ordinary disability retirement award." In those circumstances, both sets of benefits were awarded based on the same overall injury, and the employee is not entitled to a double recovery.[28]

The Court of Special Appeals in *Reynolds* relied in part on the employee's claims made in her applications for benefits and the medical evidence she submitted in support of those applications, noting that "[a]ppellant claimed the same medical condition and physical incapacity and submitted the same evidence to both the medical board and the Commission." 127 Md. App. at 655. In the instant case, the circuit court and the Court of Special Appeals similarly concluded that Mr. Reger's benefits were awarded for the same injury based in part upon the fact that Mr. Reger's applications for disability benefits both referenced the November 12, 2007 accident, and that the same medical reports and

---

[28] In addition to *Reynolds*, each party urges us to rely upon an additional Court of Special Appeals decision as persuasive authority. In his brief, Mr. Reger contends that his position on appeal is supported by an unreported opinion from the Court of Special Appeals, *Maxine Mosely v. Board of Education of Montgomery County*, No. 289, Sept. Term 2006 (Ct. Spec. App., Sept. 11, 2007). However, pursuant to Maryland Rule 1-104(a), "[a]n unreported opinion of the Court of Appeals or Court of Special Appeals is neither precedent within the rule of stare decisis nor persuasive authority." Therefore, we may not rely upon that case. In contrast, the Washington County Board of Education urges us to rely upon the Court of Special Appeals' reported opinion in *Zakwieia v. Baltimore County Board of Education*, 231 Md. App. 644 (2017). However, we note that there is a certiorari petition to that case pending before this Court and, as of the time of publication of this opinion, the Court has not yet decided whether to grant or deny the petition. Furthermore, it appears that the Court of Special Appeals' opinion in *Zakwieia* relies primarily upon its prior holding in *Reynolds*, which we have already discussed in detail. Therefore, we shall not rely upon that decision in the instant appeal.

evidence were presented in support of both applications. Before this Court, Mr. Reger contends that it is improper to rely on what was submitted or claimed before the WCC or the State Retirement Agency to determine whether the benefits are "similar." We disagree. The agency orders or letters awarding benefits may not specify the nature of the injury that was the basis for the award in sufficient detail for the Commission, or a reviewing court, to determine whether those benefits were awarded on the basis of the same injury for which the employee also received workers' compensation benefits. This is particularly true for State Retirement Agency letters awarding ordinary disability benefits, as there is no legal requirement that the agency identify the cause of the injury for which the benefit was awarded. Therefore, it may be appropriate for the Commission or a reviewing court to look at other documents and evidence in the record to determine if the benefits are for the same injury, including the applications and evidence submitted by the claimant.

Our sole point of disagreement with the intermediate appellate court's reasoning in *Reynolds* is as to its alternate explanation for why the statutory offset should apply: that because ordinary disability retirement benefits and the workers' compensation benefits at issue in that case are both "wage loss benefit[s]" they are *per se* "similar" benefits. As noted previously, we explicitly rejected that rationale in *Newman*, where we stated that the statutory offset now contained in LE § 9-610 "focuses only on dual recoveries for a single on-the-job injury" and "does not encompass setoffs for every type of wage-loss benefit available." 311 Md. at 727. We note that ordinary disability retirement benefits do not necessarily preclude an employee from working in the future—an employee need only show that he is "incapacitated for the further performance of the normal duties of the

60

member's position" to receive those benefits, not that he is unable to work at all. *See* SP §

29-105(a). Thus, an employee could hypothetically retire from a governmental employer

on ordinary disability benefits for one incapacity, return to the workforce in a new position,

and later incur a separate and distinct injury, for which he receives temporary total

disability benefits from his new employer. In that event, he would be receiving two wage-

loss benefits, but for different injuries, and the benefits should not be offset merely because

both benefits are designed to compensate him for lost wages. Conversely, the statutory

offset provision in LE § 9-610 is not limited only to those benefits that might be

characterized as "wage loss benefits," but applies to any benefit awarded to compensate

the same injury for which the employee also received workers' compensation benefits. *See*

*Oros*, 56 Md. App. at 690 (describing permanent partial disability benefits as "more in the

nature of earning capacity impairment benefits" than "wage loss" benefits).

In summary, as clarified by our above analysis about the differing standards the

State Retirement Agency and WCC apply to award disability benefits, and as further

supported by the Court of Special Appeals' reasoning in *Reynolds* and in the instant case,

we conclude that when a claimant suffers a single overall injury that involves a preexisting

condition that was exacerbated or triggered by an accidental injury, the State Retirement

Agency and WCC may both award the claimant benefits for that single injury but make

contrasting findings as to the cause of the injury. In order to ensure that the statutory intent

and purpose of LE § 9-610 to prevent a double recovery for the same injury prevail, we

hold that in those circumstances, the WCC may properly apply the statutory offset in LE §

9-610, and issue an order permitting the employer or insurer to set off the temporary total disability benefit against the ordinary disability retirement benefits.

In determining whether the two sets of benefits were awarded for the same injury, the WCC may consider any relevant evidence that may clarify the injuries for which the temporary total disability and ordinary disability retirement benefits were awarded, and whether the benefits were awarded for the same or separate injuries. That relevant evidence may include the Medical Board's recommendation or State Retirement Agency's order supporting an award of ordinary disability retirement benefits. But, because the State Retirement Agency and WCC may have reached different conclusions as to the cause of a same injury, the WCC may also consider other evidence in the record, which may include medical reports, information stated in a claimant's application for benefits, or witness testimony presented to the WCC.

### 3. In the Instant Case, Mr. Reger Was Paid Both Sets of Benefits As Compensation For The Same Injuries to His Back and Neck

In the instant case, it is clear that Mr. Reger was paid both ordinary disability benefits and temporary total disability benefits as compensation for the same back and neck injuries. Although Mr. Reger's custodial position involved "very physical work" that included regular bending and lifting, he repeatedly testified to the WCC that he had never missed any time from work or sought any medical treatment for "any back problems" prior to the November 12, 2007 work accident.[29] After that accident, in early 2008, Mr. Reger

---

[29] In testimony before the WCC, Mr. Reger acknowledged an earlier 2004 injury involving a file cabinet, which required an MRI and "some physical therapy." However, Mr. Reger expressly denied that the 2004 injury had resulted in any back problems.

saw Dr. Larkin for treatment, and was diagnosed for the first time with degenerative back conditions: spondylolisthesis and cervical stenosis. However, during the course of proceedings before the WCC in which Mr. Reger sought temporary total disability benefits until he could undergo and recover from a proposed lumbar surgery, he submitted a letter from Dr. Larkin to the Commission, in which Dr. Larkin stated,

> [Mr. Reger] had a pre-existing spondylolisthesis **in which he managed to work effectively for years with this problem until he had an accident at work**. This temporal relationship of his accident indicates to me that **there is a reasonable degree of medical certainty that his current condition is a result of his accident at work**.

(emphasis added). Thus, Mr. Reger's own testimony before the WCC as well as the medical opinion of his own treating physician submitted to the Commission plainly indicate that, while he may have had an undiagnosed degenerative back medical condition prior to the November 12, 2007 accident, he did not suffer from a back **injury** that caused him to miss work until after that accident.[30]

---

[30] The other medical reports and evidence in the record are in accord with Dr. Sansur's conclusions. Dr. Charles Sansur, who performed a 2010 lumbar surgery on Mr. Reger, submitted a report in subsequent WCC proceedings in which he stated in part that "[w]hile the accident in 2007 is not the exact cause of [Mr. Reger's] spinal stenosis, it is quite clear that such an incident certainly exacerbated his symptoms and resulted in him requiring further medical and surgical treatment." The WCC sought an independent medical examination in addition to Dr. Sansur's report, and the parties engaged Dr. Kevin McGrail to examine Mr. Reger. Dr. McGrail similarly found that "[a]lthough Mr. Reger's [back condition] was congenital and degenerative, the accident seemed to have significantly aggravated this condition to the point where it became unmanageable with anything but a surgical procedure," and that "[b]ased on his history, it does seem that the traumatic incident was an aggravating factor to both his back pain and his ultimate requirement for surgery."

63

The WCC initially denied Mr. Reger temporary total disability benefits but, after a petition to the circuit court for judicial review, a jury returned a verdict in his favor, and the circuit court vacated the order of the WCC and remanded for entry of an order finding,

1       Mr. Reger has not attained maximum medical improvement with regard to his work-related back injury.

2       That Mr. Reger's need for back surgery is causally connected to the accidental injury of November 12, 2007; and

3       Mr. Reger was temporarily totally disabled from July 16, 2008 to September 9, 2009[.]

Thus, it is clear that Mr. Reger's temporary total disability benefits from July 16, 2008 to September 9, 2009 were awarded on the basis of the back injuries he sought treatment for following the November 12, 2007 accident that required back surgery and rendered him unable to work. The same is true of his second period of temporary total disability benefits from September 25, 2010 to November 8, 2013. Mr. Reger secured those additional benefits after he had again sought to receive temporary total disability benefits until he could undergo and recover from a second proposed surgery, for neck and left arm and elbow pain. He was again initially denied benefits by the WCC, and again successfully appealed for judicial review in the circuit court, resulting in a jury finding that his second proposed surgery was causally related to the November 12, 2007 accident.

Mr. Reger's application to the MSRPS for accidental disability benefits similarly reflects that he sought benefits for the same back injuries that he suffered after the November 12, 2007 accident. Mr. Reger's description of his "disability or medical condition" indicated conditions relating to his lower back, neck, shoulder, left leg, and left hand. He also described how, **after** the accident, he could not physically perform certain

64

functions of his job, including climbing steps or ladders, standing for a long time, lifting items, mowing grass, scrubbing doors, shoveling snow, etc. Dr. Larkin, the same physician who submitted a report to the WCC on Mr. Reger's behalf, signed a Physician's Medical Report attached to the application, which gave a similar description of his degenerative back problems. Furthermore, as Mr. Reger's counsel conceded during questioning by the circuit court judge during the summary judgment hearing, the same medical records were submitted to the State Retirement Agency as to the WCC. The Medical Board concluded that Mr. Reger suffered a permanent disability, and recommended that Mr. Reger be approved ordinary disability benefits based upon the degenerative back problems identified by Dr. Larkin. The Medical Board's recommendations were thereafter adopted by the State Retirement Agency, which awarded Mr. Reger ordinary disability retirement benefits.

Thus, the record plainly demonstrates that both sets of benefits were awarded for the **same injuries**: the back injuries which Mr. Reger suffered in the aftermath of the November 12, 2007 accident. [31] Therefore, we hold that Mr. Reger's ordinary disability benefits are "similar benefits" to his temporary total disability benefits, and the statutory offset in LE § 9-610 applies.

---

[31] To the extent that our analysis and reasoning differs from that set forth by the circuit court and the Court of Special Appeals, both of which relied in part upon the "wage loss" rationale stated in *Reynolds*, 127 Md. at 655, that does not affect the outcome of this appeal. As we are tasked with reviewing "the agency's decision directly, not the decision of the Circuit Court or the Court of Special Appeals," *Hollingsworth*, 448 Md. at 654, our sole concern is the decision of the WCC, and any variance between our reasoning and that of the circuit court or intermediate appellate court is irrelevant. And, the record of the offset hearing before the WCC clearly reflects that the Respondents raised a claim before the agency that Mr. Reger was awarded both sets of benefits for the same back and neck injuries he was diagnosed with following the November 12, 2007 accident.

# IV.
# CONCLUSION

In summary, we hold that the legislative intent behind the overall offset provision now contained in LE § 9-610 is to prevent employees of a Maryland governmental unit or quasi-public corporation who are covered by both a pension plan and workers' compensation from receiving a double recovery for the same injury. Similarly, we conclude that the legislative intent behind the specific language in the statute that "payment of the benefit by the employer satisfies, to the extent of the payment, the liability of the employer . . . for payment of **similar benefits** under this title," LE § 9-610 (emphasis added), was that the offset apply only to "comparable" benefits, which are "**benefits accruing by reason of the same injury**." *Newman*, 311 Md. at 727 (1988) (emphasis added). And, we note that a benefit that compensates an employee for wage loss is not necessarily a "similar benefit" subject to the statutory offset; the offset would not apply if the wage loss benefit was not awarded for the same injury as the workers' compensation benefit. *Id.*

We further hold that, as a matter of law, ordinary disability benefits can be legally similar to workers' compensation benefits, if the record reflects that the cause of the incapacity for which ordinary disability benefits were awarded was the same workplace accidental injury or occupational disease that was the basis for the workers' compensation benefits.[32] Although Mr. Reger contends that the offset should be limited only to accidental

---

[32] Our holding today does not imply that an award of ordinary disability retirement benefits should always be offset against an award of temporary total disability workers' compensation benefits. Nor do we agree with the amici curiae's view that, as a matter of

disability benefits, such a holding would be contrary to the statutory purpose of the offset; it would incentivize governmental employees to apply only for ordinary disability benefits, knowing that they could also obtain a second recovery for the same injury from the WCC that would not be subject to the statutory offset.

Finally, we hold that in this case, the record reflects that the ordinary disability benefits paid to Mr. Reger were based on the same injury as his temporary total disability benefits. Although the State Retirement Agency arguably found that the injury for which it was awarding Mr. Reger ordinary disability benefits was caused by his preexisting degenerative back problems, whereas his temporary total disability benefits from the WCC were awarded for his November 12, 2007 accident, that does not imply that each benefit was awarded for a separate and distinct injury. The State Retirement Agency and WCC apply different legal standards to determine whether a beneficiary is entitled to a disability benefit. Therefore, when a disability claimant suffers an injury involving a preexisting condition that is triggered or exacerbated by a work accident, the two agencies may both award benefits for the same injury but ascribe different causes to that injury. Under those

_____

law, LE § 9-610 should apply "to ordinary disability [retirement] benefits to the same extent that it applies to accidental disability [retirement] benefits when the reason for the disability payment includes the same body part for which workers' compensation benefits are awarded." Although the fact that an employee's ordinary disability benefits were awarded on the basis of an injury to the same body part for which workers' compensation benefits were awarded is certainly relevant to deciding whether the benefits were awarded on the basis of the same injury, it is not necessarily determinative. An employee may be able to prove to the Commission that the two benefits were each awarded on the basis of separate and distinct injuries involving the same body part. While that may be a difficult factual showing for an employee to make—and, as we have shown, is not one that is supported by the record of Mr. Reger's injuries in the instant case—we cannot say that, as a matter of law, it is an impossible one.

67

circumstances, in order to determine whether ordinary disability benefits and workers' compensation benefits were awarded on the basis of the same injury, the WCC is not bound to prior agency findings as to causation. Instead, the WCC may consider any relevant evidence or argument submitted as to the basis for each benefit, which may include: letters or orders granting a benefit, information stated in a claimant's application for benefits, and evidence submitted to the agency, such as medical records or witness testimony. Here, that evidence clearly shows that both sets of benefits were awarded to compensate the same injuries; Mr. Reger claimed in both applications for benefits that he was seeking benefits for the same back and neck injuries, submitted the same medical records and similar medical expert opinions, and testified before the WCC that the first injury that he had suffered to his back occurred after the November 12, 2007 accident.

Although Mr. Reger has been granted two sets of benefits for the same injury, he is entitled to only one recovery for that single injury. Therefore, we hold that the WCC did not err in its determination that the offset provision in LE § 9-610 applies in this case, and that the Respondents are entitled to offset Mr. Reger's ordinary disability benefits against his temporary total disability benefits. Accordingly, the judgment of the Court of Special Appeals is affirmed.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED. COSTS TO BE PAID BY PETITIONER.**